THE HOME INSURANCE AND BANKING COMPANY OF TEXAS *v.* CHARLES LEWIS.

1. INSURANCE.—The principle, that equity will reform a written contract, where there has been an innocent omission or insertion of a material stipulation contrary to the intention of the parties, is as applicable to a policy of insurance as to any other form of contract.

2. INSURANCE—WARRANTY—ESTOPPEL.—When the agent of an insurance company, to whom an applicant correctly stated the description of his property, makes a mistake in reducing the application to writing, which is signed by the applicant, with a warranty of its correctness, and the mistaken description is made a part of the policy, the act of the agent will operate as an estoppel to prevent the company from making the warranty available as a defense.

3. INSURANCE—MISTAKE.—An applicant for a policy of insurance described his property as two-story frame buildings on lots 11, 14,

and 15, in block number 309. The evidence disclosed that applicant owned lots, corresponding in number, on block number 609, on which were situated buildings belonging to applicant, of the description given, while block number 309 was wholly unimproved:
*Held*—

1. That there was enough of the description which was true to correct the mistake in the number of the block by construction, if open to correction at all.

2. The fact that the rules of the company prohibited it from taking a risk of over $3,000 on one block, and that amount had already been taken on other houses on block number 609, but in favor of a party who had forfeited his policy by removal before the mistake in the new policy was made, cannot vary the rule which would permit the mistake to be corrected. The materiality of the number of the block to the making of the contract of insurance was a question of fact for the jury.

4. INSURANCE—MISTAKE.—A charge which assumes that the insurance company will be regarded as waiving a misdescription in the application, of the property insured, on account of the fact that the president of the company ascertained the mistake and took no steps to cancel the policy, is error, in the absence of facts showing that the president had authority to bind the company in contracts of insurance.

APPEAL from Galveston. Tried below before the Hon. A. P. McCormick.

The appellee brought suit upon a policy of insurance, issued on February 3, 1873, for one year, made by appellant upon three frame buildings situated on lots numbers 11, 14, and 15, in block number 309, in the town of Hearne, which were consumed by fire during the existence of the policy. The number of the block upon which the buildings burned were situated was number 609, and the question was whether, under the circumstances, appellant was liable. Judgment was rendered against the appellant for the full amount of the policy.

Petition stated that Lewis, the appellee, was the owner of the buildings, and that they were situated in block number 609; that he gave the proper number to the secretary of the company, who inserted it, as he supposed correctly, in the application, which he (Lewis) signed without reading; that since the fire he has learned that by mistake the number of the block

309 was inserted instead of 609; that, by a similar mistake, the secretary inserted the number of the block 309 in place of 609 in the policy of insurance ; that the policy was handed to him, folded up, by the secretary; that he put it in his pocket, and never examined it until after the fire, when he discovered the mistake; that the president of the company was well acquainted with the buildings, and always recognized them as the property insured; that other officers of the company knew after the issuance of the policy the property insured, and made no objection, and never sought to cancel the policy of insurance; that block number 309 was some distance from the town of Hearne, and, although placed on the map of the town, was not built upon; wherefore the company was liable to pay the amount of the policy, as the property on block number 609 was the property really insured.

To which appellant filed a general demurrer and a general denial.

The demurrer was overruled, and the parties went to trial.

Plaintiff introduced in evidence the policy of insurance.

Charles Lewis testified that he applied to Mr. Spiers, the secretary of defendant, for insurance on three buildings; that Spiers took a blank application, asked the numbers of the lots and block upon which the property was situated, and the usual questions upon printed applications, which were answered ; that the property was three two-story wooden houses, situated on lots numbers 11, 14, and 15, in block 609. Supposing that Spiers had written as instructed, he signed the application without reading.

The policy was handed him folded and placed in his pocket, and he never examined it until three days after the fire, when he discovered that the number of the block inserted was 309 instead of 609.

Number 309 is a mile from town, and only exists on the map of the town of Hearne; is not built on or owned by plaintiff; was perfectly familiar with the number of the block upon which his buildings were situated.

Colonel Burnett, the president of the company, was well acquainted with the property; examined the flues in April, after the policy issued, and expressed himself satisfied with the risk.

J. T. Burt occupied one of his houses until late in January, 1873; knew that Burt had removed when he made the application.

The present secretary of the company, W. B. Sorley, was introduced by plaintiff; produced the books of the company, showing that Burt's policy was cancelled on the 17th of March, 1873, and no other insurance appeared on block 609 from that date; that Burt's application had been mislaid; he had no doubt it would show that the property belonged to Lewis, as the invariable rule was to insert the owner's name in the application.

The defendant then introduced Wm. B. Sorley, who stated that Mr. Spiers was secretary at the time of issuing the policy sued on; that it was a rule of the company not to accept risks in one block, in towns the size of Hearne, in an amount over two thousand dollars.

Defendant introduced the application of plaintiff.

Mr. Spiers testified that at that time he had no connection with the company, and was in no manner interested in the result of the suit; that he was secretary of the company at the issuance of the policy; that plaintiff gave to him the number of the block as 309, he is positive, and could not be mistaken, as he examined his books and found the company had no risk in block 309; had plaintiff applied for insurance on block 609, it would have been refused, as the company had a risk in favor of J. T. Burt for $2,500, which was not cancelled, and at that time $3,000 was the extent allowed on any one block in Hearne, which has since been reduced to $2,000; that the secretary was the proper officer to pass upon fire risks, aided by the advice of the fire committee, when necessary; that the president was not authorized to accept risks or issue policies.

40 ·

When application was made for insurance for Mr. Porter, the number of the block was not mentioned; but it was refused, because it was stated to be on the same block with Mr. Lewis.

The defendant objected to the testimony of Lewis, so far as offered to alter or contradict the policy, unless it was shown the mistake was caused by the fraud of defendant's agents, or by mutual mistake of plaintiff and the secretary of the company, that it was intended by plaintiff and secretary that number 609 should be inserted as the number of block. The court gave an instruction, at appellant's request, which will be found in the opinion, and refused to give the following charges, asked for by the defendant:

"If the jury believe, from the testimony, that the plaintiff unintentionally or designedly represented the property insured as being located in block number 309, instead of block number 609, and at the time the defendant had no information other than that derived from the application, then the plaintiff cannot recover in this suit.

"If the jury believe, from the testimony, that the plaintiff unintentionally or designedly represented the property insured as being located in block number 309, instead of block number 609, and the jury further believe, that if the plaintiff had represented the property as being located in block number 609 the defendant would not have issued the policy, or taken the risk, then the plaintiff cannot recover in this action.

"If the jury believe, from the testimony, that the plaintiff, in an application for a policy of insurance, signed by himself, has incorporated in it the property asked to be inserted as being situated in block 309, and the policy issued in conformity with the application locating the property in block 309, the plaintiff cannot recover upon the destruction of property in block number 609, without they believe that it was understood at the time of the application and issuance of the policy, by plaintiff and defendant, that the property to be insured was located in block 609."

Verdict and judgment rendered for plaintiff for the sum of $2,500, with interest.

Motion for new trial overruled, and notice given of an appeal.

*Waul & Walker*, for appellants.—We submit, that equity would not take jurisdiction, nor will parol testimony be permitted, unless the mistake is mutual and common to both parties to the policy, and it must appear that both have done what neither intended to do. (Bryce *v.* Lorillard Ins. Co., 55 N. Y., 240.)

When the minds of the parties have not met, there is no contract, and hence none to be rectified; a mistake on one side may be a ground for rescinding, but not for reforming a contract. For a late and clear enunciation of these principles, see Hearne *v.* Ins. Co., 20 Wall., 490, 491; John Hughes *v.* Mercantile Mutual Ins. Co., 3 Ins. Law Journal, 428, 429; Calverley *v.* Williams, 1 Ves. Jr., 211; Coles *v.* Bowne, 10 Paige, 534; Mortimer *v.* Shortall, 2 Dr. & War., 372.

A court of equity ought in all cases to withhold its aid, when the mistake is not made out, by the clearest evidence, according to the understanding of both parties, and upon testimony entirely exact and satisfactory. (Andrews *v.* Essex Fire and Marine Ins. Co., 3 Mason, 6.)

And the ordinary rule of evidence in civil actions, that a fact must be proved by a preponderance of evidence, does not apply to such a case as this. The proof that both parties intended to have the precise agreement set forth inserted in the deed, and omitted to do so by mistake, must be made beyond a reasonable doubt. (Stockbridge Iron Co. *v.* Hudson Iron Co., 102 Mass., 45; Coopers *v.* Farmers' Ins. Co., 50 Penn., 299, 307; Sawyer *v.* Hovey, 3 Allen, 331; Oliver *v.* Commercial Marine Ins. Co., 2 Curtis, 295; National Fire Ins. Co. *v.* Crane, 16 Md., 260; Yonkers Fire Ins. Co. *v.* Hoffman Fire Ins. Co., 29 Superior Court Rep., (6 Rob.,) 316; Davega *v.* Crescent Ins. Co., 7 La. Ann., 228.)

In the application of these principles to the petition, we find no fraud charged; that the mistake was on one side, the side of the company, if you please; the contract to insure buildings in block 609 is not alleged to have been assented to by the company, or that the minds of the contracting parties ever met in an agreement to insure on block 609; and it follows that the case made out by the petition does not present such a case as would give a court of equity jurisdiction to reform the policy, or, though every allegation as laid was proved, sufficient for a court or jury to interfere for like purpose.

The allegations fall very far short of the facts necessary to establish a waiver. There is no averment that the president informed the company, nor that he was the agent of the company, charged with any duty about this or any other insurance business.

The knowledge of the president relied upon, is that he was well acquainted with the premises, and recognized them as the buildings insured. It is not pretended that he knew the number of the block on which the buildings were situated, or of the mistake in the policy; indeed, it was difficult for him to know that of which the plaintiff was ignorant until after the fire.

The knowledge of the president cannot be charged as notice to the company.

The directors or trustees of a corporation, when assembled as a board, are the general agents of the corporation; and notice to them, when so assembled, is notice to the company and to their successors.

But notice to the president, or other officer or individual director who has no duty to perform in relation to the subject of such notice, is not constructive notice to the corporation, and is no more operative than notice to any ordinary corporator; and notice to a simple corporator is no more effective than if given to a stranger. (Flanders on Fire Insurance,

179; Keenan *v.* Dubuque Mutual Ins. Co., 13 Iowa, 375; Davega & Co. *v.* Crescent Ins. Co., 7 La. Ann., 228.)

Representations are part of the proceedings preliminary to the contract; but when a representation is inserted in the policy it becomes a warranty. (Williams *v.* New England Mutual Ins. Co., 31 Me., 219; Pierce *v.* Empire Ins. Co., 62 Barb., 636; Nicoll *v.* American Ins. Co., 3 Wood. & Min., 529; Glendale Woolen Co. *v.* Protection Ins. Co., 21 Conn., 19.)

And the rule that a warranty does not extend to defects which are known to the purchaser in the sales of property, does not apply to warranties in contracts of insurance. (Jennings *v.* Chenango Mutual Ins. Co., 2 Denio, 75; Kennedy *v.* St. Lawrence Mutual Ins. Co., 10 Barb., 285.)

*Ballinger, Jack & Mott,* for appellee.

I. The petition was undoubtedly good. It alleged a mistake of the secretary of the company in taking down Lewis' statement, and the mistake in the application and in the policy was not discovered by Lewis until after the fire.

It may be shown, " that a policy of insurance was not reduced to writing conformably to the real intent of the parties; and in such case a court of equity will reform the contract." (Flanders on Fire Insurance, 2d ed., p. 97. See, also, Rawle, 342; 3 Biss. M. R., 418; and especially 13 Wall., 230, *et seq.;* 21 Wall., 155, 156.)

II. The pleadings and the evidence raised the issue as to who made the mistake. The court charged on this point, and as fairly for the defendant as for the plaintiff. This was the main point in the case, and the jury was warranted in discarding every other consideration, and finding for the plaintiff on this point at once.

GOULD, ASSOCIATE JUSTICE.—"In cases of written agreements, where there has been an innocent omission or insertion of a material stipulation, contrary to the intention of both

parties," equity will reform the contract, (1 Story's Eq., sec. 155,) and "a policy of insurance is just as much within reach of the principle as any other written contract." (Andrews & Shepherd v. Essex Fire Ins. Co., 3 Mason, 10 ; Kerr on Fraud and Mistake, 421 ; Harris v. Columbiana Co. Ins. Co., 18 O., 116 ; Firemen's Ins. Co. v. Powell, 13 B. Mon., 311 ; National Fire Ins. Co. v. Crane, 16 Md., 260 ; Flanders on Fire Insurance, 83.)

Though it was at one time doubted whether a policy would be reformed to the extent of altering a warranty or a condition precedent to any assumption of liability by the insurers, the more recent authorities hold that mistakes in the warranty, where the agent of the insurance company, to whom the applicant correctly stated the facts, has made the blunder in reducing the application to writing, will be relieved against, or will operate as an estoppel to prevent the company from making the warranty available as a defense. (May on Ins., sec. 497, et seq.; Union Mut. Ins. Co. v. Wilkinson, 13 Wall., 222 ; Flanders on Fire Ins., 100, and references; Id., 303; 18 Ohio, supra; 7 Nev., 186 ; 25 Wis., 291 ; 4 R. I., 141 ; 1 Smith Lead. Cas., 789, 791; Howard Fire Ins. Co. v. Bruner, 11 Harris, 23 Penn., 57.)

If the warranty is not as agreed on by both parties, but by mistake is incorrectly reduced to writing, it would seem clear that the mistake should be corrected.

But a falsity of a part of the description does not vitiate a deed, where from the whole instrument the thing conveyed may be certainly ascertained. (2 Pars. on Cont., 514; Berry v. Wright, 14 Tex., 273.)

In such cases, the mistake is corrected by construction ; and this is so as to the description of the thing insured, though made a warranty in the policy of insurance. (Flanders on Fire Ins., 242; Yonkers v. New York Fire Ins. Co., 6 Robert., (N. Y. Superior Court, 1868,) 319.)

That there was a mistake both in the application and the policy, in inserting the number of the block as 309, is evi-

dent, because that block was wholly unimproved; and that the true number of the block should have been 609, was equally evident, because on that block, and that block only, were to be found, on lots numbers 11, 14 and 15, houses such as were described and belonging to the assured, Charles Lewis. There was enough of the description true to correct the mistake in the number of the block by construction, if it were open to correction at all.

The officers of the company testify that at that time it was the rule of the company not to accept risks in one block, in towns of the size of Hearne, to an amount over $3,000; that at the time of Lewis' application they had a risk in favor of J. T. Burt, on property in block 609, to the amount of $2,500, which risk was not cancelled until March 17, 1873, and that if the number of the block had been known the risk would have been refused.

On the other hand, Lewis testifies that Burt had removed from the premises before his application, and under its terms it is claimed that the policy thereby became void at once. The inference is, that, with full knowledge of all the facts, the rule would not have prevented the insurance. It does not appear that Lewis was informed as to the rule of the company stated above.

Now, in so far as the materiality of the number of the block to the making of the contract was a question of fact, it was one for the jury. If the fact were that this mistake in the number of the block was not material, that is, if it would not have prevented the contract had the company known the true number of the block, and if the mistake was caused, not by the plaintiff, but by the act of defendant's agent, then we think it was not error to correct and to enforce the corrected contract. In that event, it belongs to the class of trifling mistakes not affecting the validity of the contract. (Long on Sales, 284.)

The insertion in the contract of a warranty as to every item of the description as given by the assured, to protect the com-

pany against the fraud or mistake of the assured, does not establish a difference in the essential elements of insurance and other contracts. If the minds of the contracting parties actually met, save as to an immaterial matter, the contract was complete. By the terms of the contract, the application is considered a part thereof and a warranty by the insured, and "any false representation by the assured of the condition, situation, or occupancy of the property, or any omission to make known any fact material to the risk, or any misrepresentation whatever, either in written application or otherwise," avoids the policy. For the purpose of guarding against false representation by the assured, whatever is warranted is material, and the accused cannot dispute it. But it does not follow that the minds of both contracting parties must have agreed on every particular embraced in the warranty, otherwise there is no contract. If so, there could be no contract when the parties have misunderstood each other in any matter of description, however trivial or minute. The precautions of insurance companies against fraud should be enforced; but those precautions do not, and cannot, prevent mistakes in reducing insurance contracts to writing; and where these mistakes are as to immaterial matters which would not have prevented the contract, they should be corrected and the contract enforced.

It follows, from these views of the law, that the petition stated a good cause of action, and that the court did not err in so holding.

The charge given is as follows:

"Plaintiff claims that the insurance effected by him was applied for on block 609 in the town of Hearne, and written down by mistake of the agent of the insurance company as block 309. The defendant claims the error to have been made by the plaintiff. If the jury believed, from the evidence, that the plaintiff inaccurately stated the block, either by design or accident, and that such error was material, and that the company would not have made the insurance if the

block had been correctly stated, and that the company did not subsequently, during the continuance of the policy and before the fire, know correctly the actual situation of the property on which Lewis was insured, with reference to other property insured by the company, the jury will find for the defendant. But if the jury believe, from the evidence, that the error in the number of the block was in fact immaterial, or that the mistake was caused by the agent of the company, or that subsequently to the issuance of the policy, and before the fire occurred, the president or agent of the company became aware of the location of Lewis' property, with reference to other property insured by the company, and took no step to cancel said policy, the jury must find for the plaintiff. The jury must judge, from the evidence, how far the mistake of the number of the block was material to the insurance company."

The latter part of this charge assumes that the president was an officer whose duties and authority were such that his knowledge of the locality of the property would affect the company with notice. If the president represented the company for the purpose of making contracts, or had authority equivalent to that of a general agent in making contracts, and became aware of the mistake, this charge was correct. But the evidence is that he was not so authorized. There is no other evidence as to his duties or authority, except that he inspected this property, for the purpose of seeing if the flues were safe. We are not informed by the record as to what were the powers or duties of the president, and find nothing to justify the assumption, as matter of law, that notice to the president was notice to the company. (Flanders on Fire Insurance, 179; Keenan *v.* Dubuque M. Fire Ins. Co., 13 Iowa, 382.) Although the point is clearly presented in the brief of appellant, and supported by authorities, the appellee has not met it otherwise than by assuming that the verdict of the jury was correct on other grounds. But, for aught that we can know, the verdict may have been ren-

dered on the ground of waiver, and not on other grounds. We are constrained, therefore, to conclude that this error in the charge is fatal to the judgment.

The judgment is accordingly reversed and the cause remanded.

REVERSED AND REMANDED.