American Union Life Insurance Company *v.* William B.
    Judge, Executor of Robert B. Judge, deceased, who
    was substituted as defendant on suggestion of the
    death of Robert B. Judge, and William Judge, Ap-
    pellants.

*Insurance—Life insurance—Application.*

Where an applicant for life insurance answers " No " to the question
" Is any negotiation for other insurance on your life now pending? " and
" No " to a question as to whether any other company had ever declined
or postponed acceptance of a proposal to insure his life, the policy is
thereby rendered invalid, if it appears that two weeks prior to the sign-
ing of the application the insured had made application to another com-
pany for insurance, and that this application had been declined, although
the declination had not been communicated to the insured.

Argued Jan. 2, 1899. Appeal, No. 297, Jan. T., 1898, by
defendants, from decree of C. P. No. 4, Phila. Co., June T.,
1896, No. 636, on bill in equity. Before STERRETT, C. J.,
GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for the cancelation of a policy of life insurance.

The facts appear by the opinion of WILLSON, P. J., which
was as follows:

The bill in this case was filed for the purpose of requiring
the defendants to deliver up to the plaintiff a policy of life in-
surance which had been issued by the plaintiff to the defend-
ant, Robert B. Judge, for the purposes of cancelation. William
Judge claimed to be the assignee of Robert B. Judge, but, in-
asmuch as it was conceded at the trial that he held no higher
rights than his assignor, no further reference need be made to
him in the consideration of the case. There is very little con-
troversy between the parties as to any questions of fact. So
far as there is any such controversy it centered about one point.
On February 9, 1895, the defendant, Robert B. Judge, applied
to the plaintiff for a policy of insurance upon his life in the sum
of $25,000. On February 12, 1895, he was examined by the
plaintiff's medical examiner, and the policy of insurance for the
amount stated was issued and delivered to him. The date of

this policy was February 14, 1895. The defendant Robert B. Judge paid the first and second annual premium upon the policy. The paper signed by the assured, purporting to contain the answers which he gave to the medical examiner, contains the following question: " Has any life insurance organization ever declined or postponed acceptance of a proposal to insure your life, or accepted the same only after some modification of the originally-proposed amount, or kind of insurance, or rate of premium?" To which the same paper exhibits the answer, " No." The plaintiff claims that this answer was false; that it was material, and that by express contract of the assured it was warranted to be true, and therefore that the policy in question, which was issued upon the faith of the statement made by the assured to the plaintiff in his application for insurance and in his answers to the medical examiner's questions, was voidable on the part of the company, and should be rescinded.

Upon the question of the materiality of the matters involved in the question and answer, I have no doubt it was eminently pertinent and material that the company which was asked to issue a policy of insurance should know whether or not an application to another company had been refused, postponed, or granted only under special terms of insurance. If no such application had been made, of course, no information of importance would come from the inquiry and answer. If, however, the answer to the question revealed that there had been a prior refusal, absolute or partial, it would naturally suggest the importance of further inquiries and more careful scrutiny. It might happen that a prior medical examination had disclosed physical conditions which the medical examiner at a subsequent examination had failed to discover, either through want of skill or attention, or because for the time being the physical condition of the applicant did not disclose it. Upon the question, therefore, whether or not a company would take a given risk, it seems to me that the knowledge of the action of some other company on a previous application would be important and material. This being the case, it would seem to follow that the plaintiff must be regarded as having relied in part upon the answer of the assured to the question referred to in determining whether or not a policy of insurance would be issued to him. Indeed, such answers are, by the express terms of the

policy, made part of the consideration upon which the policy
was issued.   As has already been stated, the paper exhibiting
the answers of the assured to the medical examiner's questions
represents the defendant, Robert B. Judge, as answering the
particular question which has been before quoted in the nega-
tive.   In point of fact, however, it appears, and it is not con-
troverted, that on January 25, 1895, the defendant Robert B.
Judge applied for insurance in the Equitable Life Assurance
Society, and that on January 30 of the same year his applica-
tion was declined by that company.   There is, therefore, no
question that the answer of the assured to the question as to
his having been declined or rejected as a risk by any other com-
pany, as that answer appears on the paper referred to, was ab-
solutely untrue in point of fact.   In the answer filed by the
defendant, Robert B. Judge, he says : "I admit that the medical
examiner of the said company said to me, ' Of course, you have
never been declined for insurance,' and that I answered 'No.'"
He then goes on in his answer to aver " that the answer, state-
ment or representation so made by me was true, so far as I had
any knowledge in relation thereto, and as I verily believed."

The real contention in the case revolves about this point.
The defendant, Robert B. Judge, claimed at the trial, and so
testified, that his answer to the question was given in entire
good faith; that, in point of fact, he had not been informed that
his application to the Equitable Life Assurance Society had
been rejected.   I am of the opinion, upon the evidence, that he
had never been so informed, although by admission of his coun-
sel it appears that notice had been given of such rejection to
the broker, now deceased, who had acted in presenting his ap-
plication to the Equitable Life Assurance Society.   At the trial,
Mr. Judge somewhat modified the admission which he made in
his answer, and testified that the reply which he actually made
to the medical examiner of the plaintiff company to the ques-
tion mentioned was not "No" in unqualified terms, but "No,
so far as I have knowledge," or something to that effect.   In
this he is corroborated by the testimony of other witnesses, who
say they were present at the time of the medical examination.
On the other hand, the medical examiner testifies that, to the
best of his recollection, the negative answer was given without
qualification.   I feel obliged to say, in view of the distinct ad-

mission of the defendant that he did give an unqualified nega-
tive reply to the medical examiner's question, and in view of
the lapse of time and the improbability that witnesses would
be able to recall, after a lapse of nearly two years, what was said
in such a transaction, that the probabilities altogether favor the
inference or conclusion that Mr. Judge did answer distinctly,
" No," when the question was put to him by the medical exam-
iner.

He claims, however, that in any event his answer was given
in good faith; that it was given to the best of his knowledge
and belief, and his counsel claimed that, although in his appli-
cation for insurance he warranted the truth of all the answers
contained in the medical examiner's report, the effect of that
warranty was modified by the form of the certificate which the
company required when it took his signature to the medical
examiner's report, viz: "I hereby certify that the above an-
swers are correct and true to the best of my knowledge and
belief." The great industry of counsel has enabled them to
present some very formidable authorities tending to substanti-
ate the proposition that such a form of certificate to the correct-
ness of answers will so far modify the effect of a warranty as to
protect an assured against a mistake in an answer, when that
mistake was made honestly and in good faith. I am not pre-
pared to say that these authorities ought to be regarded as con-
trolling in this case, in any event, in view of the provisions of
the policy making the representations of the assured a part of
the consideration for the policy, and particularly in view of the
fact that when the contract of insurance was placed in the
hands of the assured, it contained copies of his application and
of his answers to the medical examiner's inquiries, so that he
had a full opportunity of knowing what they contained before
he paid any premium. In the view which I take of the case,
however, it is not necessary to rule that aspect of it. While I
do not mean to intimate that it is my opinion that Mr. Judge
deliberately intended to misrepresent the facts of the case to
the medical examiner, I am of the opinion that the answer which
he gave to the particular inquiry referred to, whether made, as
I believe it was, distinctly, " No," or made, " No, so far as I
have knowledge," or in substantially such a way, was not such
an answer as, in view of what he did know, he was bound to

make.   If such a distinction is possible, I would say that, without a distinct purpose to deceive, his answer was not candid and full.   The question of the medical examiner which immediately preceded the one referred to was this : " Is any negotiation for other insurance on your life now pending ? "   To which the assured appears to have said, " No."   It is true that in his testimony Mr. Judge stated that that question was not put to him, but, in view of the fact that he was not able to recall what questions were put to him, and of other evidence in the case as to what took place at the time of the examination, I do not accept his statement upon that point as accurate.   Assuming, then, that he had said that he had no other application for insurance pending, he could not, with entire truth, say that no other life insurance organization had ever declined or postponed acceptance of a proposal to insure his life.   He must have known, even if he had not been informed of the distinct rejection of his application by the Equitable Life Assurance Society, that that application had either been rejected or postponed.   Fully two weeks of time had elapsed since his application to the Equitable Life Assurance Society had been made, and, in my opinion, he was bound, under such a state of facts, to draw the natural inference, or, at any rate, to state the facts fully and frankly. While it is doubtless true that those who apply for or are solicited to take insurance upon their lives may be imposed upon by unscrupulous agents and be represented as having said to such agents what in point of fact they did not say, and while, therefore, it is important to hold the reins upon incorporations of that character tightly, yet it may be said with equal propriety that these companies have the right to require of those desiring to be insured full and frank information upon material points. It seems to me that they have a right to require, as an element of good faith on the part of the applicant, that when he answers a question directed to bring out information upon a particular point, he shall give all the information which his actual knowledge of the facts and probabilities of the case enables him to give.   It follows that my conclusion is that in this case the applicant, Robert B. Judge, did not give an answer to the medical examiner's question which was either true in point of fact or to the best of his knowledge and belief.

In view of what has been stated, it follows that the plaintiff

is entitled to have the policy in question canceled, unless for some other reason it has failed to establish the requisite equity.

The defendant claimed that such a defect in the plaintiff's case exists upon the allegation that the plaintiff company accepted from the assured the second year's premium upon the policy, after the company had become advised that the answer of the assured to the question of the medical examiner was not true in point of fact.   If the fact were as alleged, I should regard the case of the defendant as very strong upon the point mentioned, but, upon the evidence before me, I find that the fact is otherwise, and that the discovery of the alleged misrepresentation of the assured was not made until after the second premium was paid.   The evidence upon the point has satisfied me that the discovery was not only made after, but was due to the peculiar circumstances connected with the payment of the second premium.   The entire amount of both the premiums which have been paid have been deposited by the plaintiff in the Market Street National Bank, in the city of Philadelphia, subject to the order of the defendant, Robert B. Judge, on presentation and surrender by him of the same policy of insurance, and this amount should, of course, be paid to him or his proper representatives on the execution of the decree which is to be made in this case.

On the whole case my conclusion is that the plaintiff is entitled to the decree prayed for in this bill, and such a decree may be prepared by counsel and submitted to the court.

The court decreed a cancelation of the policy.

*Error assigned* was the decree of the court.

*John G. Johnson,* with him *L. C. Vanuxem* and *John Scott, Jr.,* for appellants.—The defendant cannot be held responsible for the negative answer to the question as to the declination of a proposal of insurance by any other company, not only because his answer was established by the testimony to have been made to the best of his knowledge and belief ; but also because the statement expressly certified that the answers were given to the best of his knowledge and belief : Kentucky & Louisville Mut. Ins. Co. v. Southard, 8 B. Mon. (Ky.) 634 ; Farmers' Ins. & Loan Co. v. Snyder, 16 Wend. (N. Y.) 481 ; Rann v. Home

Ins. Co., 59 N. Y. 387; Dilleber v. Home Life Ins. Co., 69 N. Y. 256; Washington Life Ins. Co. v. Schaible, 1 W. N. C. 369; Lebanon Mut. Ins. Co. v. Losch, 109 Pa. 100; Fowkes v. Manchester & London Life Assurance & Loan Assn., 3 B. & S. 917·; O'Connell v. Supreme Conclave Knights of Damon, 28 S. E. Rep. 282; Ætna Ins. Co. v. Grube, 6 Minn. 82; Redman v. Hartford Fire Ins. Co., 47 Wis. 89; Moulor v. American Life Ins. Co., 111 U. S. 335; National Bank v. Union Ins. Co. of San Francisco, 88 Cal. 497; Elliott v. Hamilton Mut. Ins. Co., 13 Gray, 139; Campbell v. New England Mut. Life Ins. Co., 98 Mass. 381; Planters' Ins. Co. v. Myers, 55 Miss. 479; Ætna Ins. Co. v. Simmons, 69 N. W. Rep. (Neb.) 125; Fitch v. Amer. Popular Life Ins. Co., 59 N. Y. 557; Miller v. Confederation Life Assurance Co., 11 Ont. Rep. 120; affirmed, 14 Canada, S. C. Rep. 330; Ins. Co. v. Gridley, 100 U. S. 614; Mechanics' Savings Bank & Trust Co. v. Guarantee Co. of North America, 68 Fed. Rep. 459, 466; affirmed, 80 Fed. Rep. 766; Clapp v. Mass. Ben. Assn., 146 Mass. 519; Hann v. The National Union, 97 Mich. 513; Anders v. Supreme Lodge, Knights of Honor, 51 N. J. L. 175; United Brethren Mut. Aid Society v. Kinter, 12 W. N. C. 76; Ætna Life Ins. Co. v. France, 94 U. S. 561; Mut. Life Ins. Co. v. Selby, 72 Fed. Rep. 980; Laidlaw v. Liverpool & London, etc., Ins. Co., 13 Grant Ch. (U. C.) 377; Kerr v. Hastings Mut. Fire Ins. Co., 41 U. C. Q. B. 217; National Bank v. Ins. Co., 95 U. S. 673; Mulville v. Adams, 19 Fed. Rep. 887; Fisher v. Crescent Ins. Co., 33 Fed. Rep. 549; Noone v. The Trans-Atlantic Fire Ins. Co., 88 Cal. 152; Wilkins v. Germania Fire Ins. Co., 57 Ia. 529; Garcelon v. Hampden Fire Ins. Co., 50 Me. 580: Houghton v. Manufacturers' Mut. Fire Ins. Co., 8 Metc. (Mass.) 114; American Surety Co. v. Pauly, 72 Fed. Rep. 470, 477.

A false answer, such as it is contended was given to the question concerning pending negotiations for other insurance written in the application by an agent to whom the applicant has given true answers, furnishes no ground for cancelation of the policy: Grattan v. Metropolitan Life Ins. Co., 80 N. Y. 281; Grattan v. Metropolitan Life Ins. Co., 92 N. Y. 274; Bennett v. Agricutural Ins. Co. of Watertown, 106 N. Y. 243; O'Brien v. Home Benefit Society, 117 N. Y. 310; Eilenberger v. Protective Mut. Fire Ins. Co., 89 Pa. 464; Kister v. Lebanon Mut. Ins. Co., **128**

Pa. 553; Meyers v. Lebanon Mut. Ins. Co., 156 Pa. 420; Dowling v. Merchants' Ins. Co. of Newark, 168 Pa. 234; Mullen v. Union Central Life Ins. Co., 182 Pa. 150; Plumb v. Cattaraugus County Mut. Ins. Co., 18 N. Y. 392; Pitney v. Glens Falls Ins. Co., 65 N. Y. 6; McNally v. Phœnix Ins. Co., 137 N. Y. 389; Pudkritzky v. Supreme Lodge, Knights of Honor, 76 Mich. 428.

When an insurance agent, with full knowledge of the facts, forwards to the company for which he acts an application containing false answers, the company is bound thereby, unless there was collusion between the applicant and the agent: Hunt v. Mercantile Ins. Co., 22 Fed. Rep. 503; Hartford Fire Ins. Co. v. Keating, 38 Atl. Rep. (Md.) 29; Indiana Ins. Co. v. Hartwell, 123 Ind. 177; Richards v. Washington Fire and Marine Ins. Co., 60 Mich. 420; Robison v. Ohio Farmers' Ins. Co., 93 Mich. 533; Van Schoick v. Niagara Fire Ins. Co., 68 N. Y. 434; Short v. Home Ins. Co., 90 N. Y. 16; Forward v. Continental Ins. Co., 142 N. Y. 382; Fire Assn. of Philadelphia v. Bynum, 44 S. W. Rep. 579.

A duty of disclosure, such as the learned trial judge insisted upon, was neither justified by the facts in the case nor by legal principles. His decision against the appellant because of his failure to perform such duty was erroneous: Farmers' Ins. & Loan Co. v. Snyder, 16 Wend. 481; Kentucky, etc., Ins. Co. v. Southard, 8 B. Mon. (Ky.) 634; Penn. Mut. Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., 72 Fed. Rep. 413; Mut. Reserve Fund Life Assn. v. Sullivan, 29 S. W. Rep. 190; American Surety Co. v. Pauly, 72 Fed. Rep. 470; Guarantee Co. of North America v. Mechanics' Savings Bank & Trust Co., 80 Fed. Rep. 766.

Under the Act of Assembly of June 23, 1885, P. L. 134, the answer to the question as to whether or not negotiations for insurance were pending could not in any event have been set up in avoidance of the policy: Penn. Mut. Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., 72 Fed. Rep. 413; Hermany v. Fidelity Mut. Life Assn., 151 Pa. 17; Fidelity Mut. Life Assn. v. Ficklin, 23 Atl. Rep. 197; Keatley v. Travelers' Ins. Co., 187 Pa. 197.

*Hampton L. Carson,* with him *Dimner Beeber* and *J. Levering Jones,* for appellee.—The appellee contends that the defendant

in this case has put himself in the position of one who has in effect acted with the medical examiner in such a way that if his defense is now allowed to prevail, he would be in the position of a particeps criminis : Smith v. Ins. Co., 24 Pa. 320.

The appellant was under obligation to speak out when he received the policy and saw what were reported to the company as his answers to certain questions in the application : Swan v. Watertown Fire Ins. Co., 96 Pa. 37 ; Kister v. Ins. Co., 128 Pa. 553 ; New York Life Ins. Co. v. Fletcher, 117 U. S. 519.

PER CURIAM, May 15, 1899 :

The facts of this case sufficiently appear in the opinion of the learned judge who presided at the hearing, and need not be repeated here.

We have carefully considered the record with special reference to the assignments of error, and are not convinced that either of them should be sustained. We find no substantial error in any of the learned judge's findings of fact, or in his conclusions of law. There appears to be nothing in any of them that requires discussion.

The decree is affirmed on the opinion of the learned trial judge, and the appeal is dismissed at appellants' costs.