SUPREME LODGE OF THE FRATERNAL BROTHERHOOD v. JONES.

(Court of Civil Appeals of Texas. Texarkana. Jan. 10, 1912. Rehearing Denied Jan. 25, 1912.)

1. INSURANCE (§ 723*)—MUTUAL BENEFIT INSURANCE—MISREPRESENTATIONS.

A question to assured, in his application for membership in defendant fraternal benefit society, as to whether he had been rejected within six months, must be held to refer to rejection by defendant; the questions preceding and following such question relating to matters concerning membership in defendant order.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1859–1865; Dec. Dig. § 723.*]

2. INSURANCE (§ 724*)—MUTUAL BENEFIT INSURANCE—ACTION ON POLICY—ESTOPPEL.

An applicant for life insurance in a fraternal order stated, in answer to a question in his medical examination as to whether he had theretofore made application to and been rejected by any other order, that he had applied for membership in another order, but had not, as yet, heard from such application. The medical examiner wrote in the space reserved for the answer to such question the word "no." The applicant signed the report without reading it. Held, the medical examiner was the agent of the company and not of the applicant, and the applicant was not bound by the answer; the company being estopped to assert its falsity as a defense.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1866–1868; Dec. Dig. § 724.*]

3. INSURANCE (§ 819*)—MUTUAL BENEFIT INSURANCE—ACTIONS—EVIDENCE.

Evidence, in an action on a benefit certificate, held to show that the insured acted in good faith in answering a question put to him by the medical examiner of the order as to his prior rejection for membership in other orders.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 2006, 2007; Dec. Dig. § 819.*]

4. INSURANCE (§ 723*)—MUTUAL BENEFIT INSURANCE.

Though an applicant for insurance, in answer to a question in his medical examination, which required the answer of "yes" or "no," as to whether he had previously been rejected for membership in other orders, failed to disclose that a local examiner of another order had told him that his application would probably be rejected, his certificate was not invalidated, where the local examiner had no authority to reject his application, and the opinion of such examiner was not contemplated by the question.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1859–1865; Dec. Dig. § 723.*]

5. INSURANCE (§ 819*)—MUTUAL BENEFIT INSURANCE—EVIDENCE.

Evidence, in an action on a benefit certificate, held to sustain a finding that the insured died of apoplexy, and not from a disease with which he was afflicted at the time of his appli-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

cation for insurance, and which he failed to disclose.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 2006, 2007; Dec. Dig. § 819.*]

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

Action by Ida F. Jones against the Supreme Lodge of the Fraternal Brotherhood. From a judgment for plaintiff, defendant appeals. Affirmed.

Appellant issued to William H. Jones a benefit certificate for $2,000, payable at his death to his wife. On August 5, 1910, the insured died of apoplexy. He had paid all assessments required. This suit was brought by the wife to recover the amount of the benefit certificate. The defense was: (1) That certain of the answers made by the insured in his application for membership, and warranted to be true, were false and untrue; (2) that a certain answer made by the insured to question No. 55 propounded by the medical examiner, and warranted to be true, was false and untrue. Appellee replied that the answers in the application for membership were truly made, and, in avoidance of the second ground, pleaded estoppel, in that the insured was uneducated and illiterate and answered truly every inquiry propounded by the medical examiner, and such answers as were written down by the examiner were not read over to him; that he relied on the medical examiner's writing such answers truly as given; that, if any of such answers were not written down correctly, they were so written without the knowledge or consent of the insured; that the medical examiner was in the employ of the appellant, and was its agent; that it was his duty to write down and forward to appellant answers contained in the medical examination; and that the insured had no notice of any limitation on the authority, if there were any, to write down answers for appellant. On a trial to the court evidence was heard upon the issues thus presented, and a judgment was rendered in favor of appellee.

The evidence is that appellant is a fraternal beneficiary association having a Supreme Lodge in Los Angeles, Cal., and a local lodge in Bonham, Tex., known as "Bonham Lodge No. 461 of the Fraternal Brotherhood." The order had for its object social and fraternal features, with the primary object of life and disability insurance of its members. Dr. W. B. Lewallen was the medical examiner for the local lodge, commissioned as such by the Supreme Lodge of appellant, to examine applicants for insurance in the order and to forward report of such examinations to the Supreme Lodge. It was his duty to take the application for membership, to examine the applicant, to conduct the examination, to write in his own handwriting the answers given by the applicant, and to forward the report of such examination and answers to the Supreme Lodge office in California. Acting in the capacity of medical examiner for appellant, he took the application of William H. Jones for membership in the local lodge and insurance in the order, examined the applicant, filled in with his own handwriting the blanks in the printed form for the medical examination, and forwarded it to the Supreme Medical Director at Los Angeles, who, on the faith of the truth of the answers, recommended the risk; and the benefit certificate in suit was duly issued. The application for membership was addressed "To the Officers and Members of Bonham Lodge No. 461 of the Fraternal Brotherhood," and contained the provision that for membership "the statements herein made by me are each and every one of them true." The laws provided for social membership as well as for insurance in three grades. A member having $1,000 or $2,000 insurance could procure additional insurance to $3,000. Applicant agreed to conform to the laws of the order. The question and answers in the medical examiner's blank covered the usual field of inquiry in such matters. At the top of the medical examiner's blank is the following: "Instruction to Examiners. This report must be in the writing of a commissioned medical examiner, and all questions answered so that it will not be returned for correction. The examination should be strictly confidential, no third party being present, and all alterations and erasures authenticated by the addition of the examiner's initials. Examine all applicants and send the report to the medical director. The examiner must not accept or reject applicants. This will be done exclusively by the medical director, which will protect the examiner from undue criticism. Inclose with examination report anything not stated thereon, bearing on the application as a poor risk, which will be held in strict confidence." Then follows: "The report of the medical examiner to the medical director. The examiner should at once forward this report to the medical director at Los Angeles, Cal." Following this were the questions and answers. At the bottom of the medical examiner's report appears: "I hereby warrant and declare that the answers to each and all of the questions herein are true and correct, and I agree that the questions and answers herein contained shall form a part of my contract with the Supreme Lodge of the Fraternal Brotherhood." And same was signed by Jones. Neither the application nor the medical examiner's blank contained any limitation on the authority of Dr. Lewallen as agent of appellant. It does appear from the laws of the Supreme Lodge that the medical examiner is required to reduce the answers of the applicant in his own

handwriting, and shall give "the full, explicit and correct answer to all the questions propounded in the medical examination form." It is also provided by the laws of the order "that if the examining physician shall make at any time knowingly an untrue statement regarding an examination, or gives a false certificate by which the society shall suffer, he shall forfeit any salary due him and be expelled from the society and his commission shall be forfeited." By the laws only the Supreme Lodge could commission a local medical examiner, which was done here.

The benefit certificate recites that it is based on "the statements made in the application for membership and the medical examination and the constitution and laws of the society." According to the laws of the order, only members were insured, and it was provided that "any member who shall obtain membership or try to obtain any benefit through fraud by false representations in his application or medical examination or otherwise, or by concealing his true age or any mental or physical infirmity or by suppressing any material facts relating to himself or family, or who shall assist others to obtain benefits fraudulently, shall on conviction thereof be expelled from the society, and all payments he may have made, or benefits that he or his beneficiaries would otherwise have been entitled to receive, shall be forfeited."

All issues of fact were decided by the court against the contention of appellant, and are fully supported by the evidence.

Meador, Davis & Senter, for appellant. Cunningham & McMahon, for appellee.

LEVY, J. (after stating the facts as above). [1] All the assignments of error in effect present the only controversy that the statements of the insured in both his application and the medical report for insurance were warranties and material to the risk assumed by appellant, and, because false and fraudulently made, the benefit certificate sued on is void and no recovery can be had thereon. All questions of fact were decided by the court against the contention of appellant, and are fully warranted by the evidence. It is true, we think, that the statements made by the insured should be held as warranties, and the particular answers in issue are, it is not doubted, material to the insurance risk to be assumed by appellant; and we so hold. It was first a defense that the statements made in the application for membership were false. This is first considered. It conclusively appears, we think, that the statements made in the application were truly and fairly made, and that therefore this particular defense was not sustained. The question and answer in issue, from its context and reference, could only reasonably be construed, we think, to refer and ask information about appellant's order, and no other order. The question was, "Have you been rejected within six months?" and the answer was, "No." The answer, "No," was literally true, for indisputably this was the first and only application for membership in this order that the insured ever made, and this fact is not denied by appellant. The previous questions make manifest that the question referred solely to previous application for membership in appellant's order only. The question began with, "Are you applying for additional insurance? By the proof a member of appellant's order having a certificate for $1,000 could apply for "additional insurance" to the amount of $2,000 or $3,000 over and above what he already had, not to exceed the total sum of $3,000. A member could also be "a social member" only. The next question was, "No. of present certificate?" Then follows the question in issue. After which follow the questions: "Are you a social member? Have you ever been a member of this order? If so, to what lodge do you belong? Have you ever been expelled from a lodge of this order?" Then commence the questions applicable to a person seeking to be a member. It is quite unnecessary to discuss this defense any further.

In reference to the answer to question No. 55 in the medical examiner's blank, next in issue, the two points are relied on of being false and fraudulently made. The proofs made by appellant upon this question are from the report itself and the testimony of witnesses. The medical examiner's blank was prepared and furnished the medical examiner by appellant, and contained many printed questions to be asked the applicant by the examiner. The examiner was required to reduce the answers to writing in his own handwriting, give the full, explicit, and correct answer as made, sign the report, and forward direct to appellant's Supreme Medical Director at Omaha. There was no limitation upon the authority of the examiner shown. From the medical report it appears that the following examination was made and answers given: "55. Have you ever been rejected by any order or company for life insurance? No. When and by what company? ——— In what company or orders do you carry insurance? None." The last above answer of "None" by the undisputed evidence was true in fact and correctly answered, as the insured had no insurance at the time, and appellant does not here assert to the contrary. It was conclusively proved by appellant that the first answer of "no" appearing in the medical examiner's report was untrue. It was shown that the insured had made application for membership and for insurance in the Woodmen of the World, and had been examined; that the medical examiner's report had been forwarded to the Sovereign Physician at Omaha to be passed on for acceptance or rejection, and had been

received by such Sovereign Physician on February 12th, and the application rejected by him on February 13th. The medical examination for appellant's order was being conducted on March 5th, following February 13th. It was proved by appellant that on February 15th the Sovereign Clerk of the Woodmen mailed to insured from Omaha a letter notifying him of his application for insurance being rejected. It was proved that the local medical examiner for the Woodmen told insured at the time of his conducting the examination that his examination disclosed that Bright's disease was developing in him, and that he had better consult his family physician and be treated for same, and that his application for insurance in the Woodmen would be rejected by the Sovereign Physician when he received it for examination. To meet this testimony appellee proved conclusively that the insured had not at the time the answers in issue were being made, nor since, received any letter from the Sovereign Clerk of the Woodmen notifying him of his rejection, nor otherwise was advised that his application had been acted on and rejected by that order. It was proved that the local examiner of the Woodmen did not have authority to accept or reject an applicant, and was not undertaking to accept or reject him, and that his statement to the insured that he would be rejected on the examination and report made was given merely as his opinion, and was so understood. It was proved that the insured, on the advice of the local examiner for the Woodmen that he had better consult his family physician, did in a very few days thereafter go to his family physician and stated to him what the examiner had said, and had him to examine him. The family physician made a thorough examination of the insured, and applied the approved and accepted accurate tests. The family physician then called in another physician, and the two made tests. After the tests the two physicians pronounced that the insured never had Bright's disease, and that his kidneys were not in any way involved. This pronouncement to the insured by these two physicians, that he did not have any trouble such as the other examiner had diagnosed, was prior to March 5th, when the examination in appellant's order was being conducted. The medical examiner for appellant was then called by appellee, and testified, as material here, as follows. "William H. Jones made application to this subordinate lodge for membership, and to the Supreme Lodge for insurance. As examining physician I examined him. The application and examination blank shown me is the one I made out. I made the examination myself. During the time I knew William H. Jones, his physical condition was normal. He was in good health. Up to the time of this examination I had not treated him for any kidney trouble of any character. Mr. Jones is what I would call an average farmer. I wrote the answers contained in that examination and application. I wrote all those answers to question 55. 'Have you ever been rejected by any order or company for life insurance?' I asked him that question. I asked Mr. Jones if he had ever been rejected by any insurance company or order, and he said, 'Dr. Lewallen, I have made application to the Woodmen, but have not heard from my examination yet.' I then said, 'You have received no notice from them?' He said, 'No' I said, 'Well, then, you have not been rejected,' and I wrote down the answer, 'No.' I don't think at that time he told me anything that Dr. Lanins might have said relative to his kidneys. * * * When the question 55 was asked the applicant, he said that he had made application to the Woodmen of the World, but had not heard from his application; and from that I answered 'No' for him. I did not read the answers over to William H. Jones after writing them down." He further testified that he made examination, and that the applicant did not have any affection of the kidneys. It was shown that this examining doctor was the doctor who was previously called in by the family physician to assist in making the test for kidney trouble, and knew of the diagnosis of the doctor for the Woodmen. The doctor testified: "When I made the examination of Mr. Jones and tested his urine on March 5th, I had in mind then the statement that he or Dr. Christman had made in his presence as to what Dr. Lanins had said about his kidneys being out of shape." The finding of the court is fully warranted that from the time of making the application up to two months before his death Jones was in good health and was not disabled from any cause, and during the last two months of his life suffered only from acute gastritis at intervals, and was in no way disabled until the day of his death. He died of apoplexy.

[2]. In the circumstances it must be said that, while appellant established that the answer as appearing in the medical examiner's of "No" was an untrue answer in response to the question of whether the insured had ever been rejected by any company or order for insurance, it was also further established by appellee that the answer so appearing was not in truth and fact either the statement or answer made by the applicant to the medical examiner of appellant. The answer as written, by the admission of the medical examiner, was his own conclusion or opinion from the facts stated to him by the applicant, and there is no pretense in the evidence that the applicant knew of or consented to the answer, "No," or was called on to read over the report. The evidence further indisputably shows that the medical examiner here was commissioned by the Supreme Lodge and charged with the duty to receive the answers of the applicant and reduce them to writing in the blank furnished and prescribed in his

own handwriting and to forward it to the Supreme Medical Director at Los Angeles. No limitation to his authority appears. The medical examiner was the agent of appellant, and the answer was given and received in the performance of his duties, and in writing the answer, "No," he in fact assumed to act on his own conclusion or opinion, as the agent of the appellant, rather than from the answer given him by the insured. The appellee showed a state of facts indicating honesty and truthfulness on the part of the insured.

In the case of Insurance Co. v. Hazlewood, 75 Tex. 338, 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893, there was appended to the medical examiner's report a very similar signed agreement to the one in the instant case. That agreement was construed to bind the insured by its terms as a warrantor only for answers made to the examiner, and not for the truth of the answers as written by the examiner. But we do not feel inclined to so construe the agreement here. The facts make applicable, we think, the law of estoppel, and are decisive of the point made. The appellee pleaded estoppel. In Cooley's brief on the Law of Insurance (volume 3, p. 2594) it is said: "From an examination of the cases the following propositions may be regarded as established by the weight of authority: Where the insured in good faith makes truthful answers to the questions contained in the application, but his answers, owing to the fraud, mistake, or negligence of the agent filling out the application, are incorrectly transcribed, the company is estopped to assert their falsity as a defense to the policy. The acts of the agent, whether he is a general agent or merely the medical examiner for the company, are in this respect the acts of the company, and he cannot be regarded as the agent of the insured, though it be so stipulated in the application or policy." The same statement is a text in 2 Bacon on Benefit Societies & Life Insurance, § 427. The great weight of authority is with the statement, where the insured acts in good faith and is himself without fault. Reference may be made to the following: Pudritzky v. Supreme Lodge Knights of Honor, 76 Mich. 428, 43 N. W. 373; Whitney v. Accident Association, 57 Minn. 472, 59 N. W. 943; Life & Accident Co. v. Davis, 59 Kan. 521, 53 Pac. 857; Life Assurance Co. v. Cannon, 201 Ill. 260, 66 N. E. 388; Grattan v. Life Ins. Co., 80 N. Y. 281, 36 Am. Rep. 617; Mutual Life Ins. Co. v. Wilkinson, 13 Wall. 222, 20 L. Ed. 617; Life Ins. Co. v. Mahone, 21 Wall. 152, 22 L. Ed. 593; Life Assur. Co. v. Reutlinger, 58 Ark. 528, 25 S. W. 835; Shotliff v. Modern Woodmen, 100 Mo. App. 138, 73 S. W. 326. The Supreme Court of this state has already indicated its support of the rule enunciated, and applied the doctrine of estoppel, as in the cases above, where statements are warranties. Insurance Co. v. Hazlewood, supra;

Insurance Co. v. Camp, 71 Tex. 503, 9 S. W. 473; Insurance Co. v. Blodgett, 8 Tex. Civ. App. 45, 27 S. W. 286; Insurance Co. v. Lewis, 48 Tex. 622; Order of Columbus v. Fuqua, 60 S. W. 1020. The cases cited by appellant of Insurance Co. v. Judge, 191 Pa. 484, 43 Atl. 374; Ferris v. Assur. Co., 118 Mich. 485, 76 N. W. 1041, and the others, as supporting its contention of forfeiture, show that the answer in the first instance to the medical examiner was not responsive to the question, and false, and the cases turn upon the falsity and untruth in fact of the answers so given. Such cases and the like are not at all opposed to the rule enunciated, but are in line with its requirement that the insured must make in good faith truthful answers to the questions contained.

[3] Did the insured act in good faith and without fault? If so, then under the rule enunciated appellee's plea of estoppel should prevail. If not, then the appellee, who is the beneficiary, because of the conduct of the insured, would be precluded from disputing the answer as written. The court made the finding that the insured acted in good faith and without fault or fraud. This involves the further finding that the untrue answer is the fault of the doctor acting for appellant. There is no pretense in the evidence that the insured knew of or consented to writing the answer, "No," or that he was called on to read the report or do anything about the report, but to sign his name to the statement at the end of it. The doctor did not, by his own admission, advise him of the answer as written, or indicate that he was going to write down that he was not rejected as the answer. Neither did the insured so concur by word or suggestion in this opinion of the doctor as to indicate to the doctor that "No" was the answer that he desired to be written. It was alleged that the insured was uneducated and illiterate. There would be applicable the statement applied in the Hazlewood Case, supra: "Where there are no circumstances to excite the suspicion to the contrary, we can see no reason why he may not have trusted to the medical examiner's correct and honest performance of his duty. We do not think his contract or the exercise of ordinary prudence demanded of him to assume that there was any want of capacity, care, or honesty upon the part of the medical examiner, or make it his duty to assume the exercise of supervisory power over the work of that officer. If, however, it did by any means come to the knowledge of the insured that the answers given by him had been incorrectly written down, it became his duty to see that the proper corrections were made." Was the statement made by the insured to the doctor such as was reasonably calculated to induce the doctor to draw only the conclusion that he did write down for the answer? Such, we think, cannot be said. The statement was full and clear, I have made

application to the Woodmen, but have not heard from my examination yet." The doctor then sought the further information, "Have you received no notice from them?" The answer was, "No." The answer, "No," as given to such question, was in the circumstances quite the correct reply, and true, and not a misrepresentation. The doctor could not reasonably have understood otherwise from the full statement than that there was a pending application, which was delayed or postponed, and of which the applicant had not received any notice from authorized officers that it was finally acted on. In the absence of notice of what action the Woodmen through its authorized officers had taken on this application, what more responsive answer of fact besides the answer given to the doctor could the insured have truly given to the question, when viewed from the standpoint of an undertaking to state the truth? In the very nature of the pending situation of the application, the insured could not truly and consciously have answered "yes" or "no" to the question in the application, because he did not have exact or positive knowledge that the authorized officers had rejected the application, nor was it a fact peculiarly within his own knowledge that the authorized officers had taken official action on his application. The application was received by the Sovereign Physician of the Woodmen on February 12th preceding March 5th, when the question was asked. The delay might have aroused his suspicion that he would be rejected, but it was not such an unreasonable postponement in time as to be conclusive to him as a conscious fact that it was rejected. He could reasonably have expected a notice of his rejection. He frankly and fully disclosed the fact that it was pending and by him yet unheard from. If the statement as given to the doctor had been written, the appellant would have had the date from which it could have gotten the exact information by writing the Woodmen order, if it so desired. In the absence of notice being received by the insured, most certainly there could not be predicated the contention that he made a fraudulent representation of fact.

[4] The appellant contends that the insured should have further stated to the examiner the fact that the examiner for the Woodmen had informed him that he would be rejected on his physical examination when the report was received by the Sovereign Physician at Omaha. It was merely the belief of the doctor, founded on the fact reported, that he would be rejected for the cause stated in the report. It was understood by the insured as the belief of the doctor. The doctor had no authority to accept or reject the application, and he so stated to insured, and at the same time further stated to him that he would forward the application to his ·superior officer for action thereon. The question asked by appellant's examiner indicated that insured should answer "yes" or "no" that he had ever been rejected by any order for insurance. His opinion in respect thereto, or cause of rejection, was not called for. The effect of the answer was to say, "I can't positively answer yes or no, but can only truly say I have made the application to the Woodmen, but have not yet heard whether the authorized officers of the order have accepted or rejected the same." The indicated scope of the question was substantially met by the statement of fact. Such answer being truly and fairly made as the question indicated, and without fraudulent intent, as the evidence shows, the appellee would not be precluded from a recovery on the ground that the insured was guilty of negligence in not disclosing to the medical examiner that he had been informed by the examiner for the Woodmen .that his physical examination would likely operate to his rejection. There is involved in the court's finding that such act of the insured was not negligence, and the finding is sustained.

[5] The appellant assails the finding of the court that the insured "died of apoplexy, and that such apoplexy was not brought on, contributed to or caused by any disorder of his kidneys." It is true that the doctor examining the insured for the Woodmen pronounced the examination at the time to disclose incipient Bright's disease; but in a very few days after that examination two other physicians made a careful examination with approved and accurate tests, and pronounced the fact that there was no Bright's disease or any affection of the kidneys. We would not be authorized to say that the diagnosis of the first examination was correct, and conclusively assume that the insured had a fearful and fatal malady, and thereby committed a wrong ab initio upon appellant. The court's finding that the insured was in good health and not disabled from the time of his examination and that he died from apoplexy alone is amply sustained. It was shown that apoplexy could result from many causes.

As the judgment of the court is warranted by the facts and the law, it should be affirmed; and it is, accordingly, so ordered.