SCHUMANN v. BROWNWOOD MUT. LIFE INS. ASS'N. (No. 653–4521.)

(Commission of Appeals of Texas, Section B. June 23, 1926.)

1. **Insurance** ⬅379(4)—Where insured gave true age to agent, who later changed it, certificate was valid, where issuance to person of that age was not absolutely forbidden in mutual association's by-laws.

Under mutual association's by-law qualifiedly permitting admission of applicants over 60 years of age, applicant over 60 who gave true age to agent, who later changed it in application, received valid certificate, since applicant could assume officers had done their duty.

2. **Alteration of instruments** ⬅16.

Ordinarily, one has no right to change or tamper with instrument signed by another.

3. **Evidence** ⬅590—Statement of secretary of mutual insurance association that he did not change figures in insured's application was not conclusive, though uncontradicted.

In action on certificate of mutual aid association, on issue whether insured stated correct age in application and soliciting agent falsified it, it was not necessary for jury to believe statement of association's secretary, who admitted mutilation of application, that he only made figures more distinct, though he was neither impeached nor contradicted.

4. **Appeal and error** ⬅1177(7).

Court of Civil Appeals should remand for new trial when it considers verdict against weight of testimony, and not render final judgment.

5. **Insurance** ⬅379(5)—Applicant has no duty to see that insurer's agent has correctly written answers in application, where he merely warrants correctness of answers.

Where answers to questions in application for membership in mutual association were written therein by insurer's examining agent, no duty rested on applicant to read application to see that answers had been correctly written before he signed under agreement that he warranted answers to be true.

6. **Insurance** ⬅379(1)—Insurer was liable, where soliciting agent falsified application after insured signed it, whether latter read application or not (Rev. St. 1911, art. 4968).

Where applicant gave correct answers to questions in application to soliciting agent, but did not read application, and subsequently latter, being insurer's agent, under Rev. St. 1911, art. 4968, falsified an answer, insurer is liable, whether applicant was under duty to read application or not.

7. **Insurance** ⬅602, 800.

Penalties and attorney's fees cannot be awarded against a mutual aid association or fraternal insurance society because of delay in payment, under Rev. St. 1911, art. 4746.

8. **Appeal and error** ⬅1114—Where Court of Civil Appeals reversed judgment as against weight of testimony and rendered judgment for appellant, Supreme Court can only remand case to trial court for new trial.

Where Court of Appeals held that jury verdict was against preponderance of testimony, it could remand cause, and Supreme Court, though differing with Court of Appeals as to sufficiency of evidence to raise certain issues, cannot affirm judgment of trial court, but will remand to trial court for new trial.

Error to Court of Civil Appeals of Eleventh Supreme Judicial District.

Suit by Mrs. Louise Schumann against the Brownwood Mutual Life Insurance Association on a certificate of membership. Judgment for plaintiff was reversed and rendered by the Court of Civil Appeals (276 S. W. 956), and plaintiff brings error. Judgments of the district court and Court of Civil Appeals reversed, and cause remanded for new trial.

Jerome P. Kearby, of Comanche, for plaintiff in error.

R. L. McGaugh and Wilkinson & Wilkinson, all of Brownwood, for defendant in error.

POWELL, P. J. Plaintiff in error, as the widow of Frank Schumann, sued defendant in error upon a certificate of membership. In the district court, judgment was awarded plaintiff in error upon the verdict of a jury upon special issues as follows:

"Special issue No. 1: Did the deceased, Frank Schumann, make the written application for insurance in evidence before you? Answer 'yes' or 'no.' Answer: 'No.'

"Special issue No. 2: Did the defendant company issue the policy of insurance in question wholly and solely upon the face of the written application made to the defendant company through M. A. Martin? Answer 'yes' or 'no.' Answer: 'Yes.' (But not as it was when it left Frank Schumann.)

"Special issue No. 3: Did the deceased, Frank Schumann, state his age correctly to the said Martin? Answer 'yes' or 'no.' Answer: 'Yes.'

"Special issue No. 4: Did the deceased, Frank Schumann, state to M. A. Martin that he, the said Frank Schumann, was more than 60 years of age at the time he, the said Schumann, made application for insurance? Answer 'yes' or 'no.' Answer: 'Yes.'

"Special issue No. 5: Was the said Frank Schumann informed by the witness Martin at the time he applied for insurance that the company would not issue policies to parties that were over 60 years of age at the time of making application for insurance? Answer 'yes' or 'no.' Answer: 'No.'

"Special issue No. 6: Was the age of Frank Schumann written in the application for insurance by Martin showing his age to be less than 60 years so written with the knowledge of the applicant, Frank Schumann? Answer 'yes' or 'no.' Answer: 'No.'

"Special issue No. 7: Has the defendant confined the area within which it operated or solicited insurance to an area of a radius of 50 miles of Brownwood, Tex.? Answer 'yes' or 'no.' Answer: 'No.'

"Special issue No. 8: Has the defendant, who claims to be a mutual aid association, been connected, associated, or federated with any other mutual aid association? Answer 'yes' or 'no.' Answer: 'Yes.'

"Special issue No. 9: What would be a fair and reasonable attorney fee for representing and prosecuting to final determination this suit by the plaintiff? Answer stating in dollars and cents the amount you find. Answer: $350."

Upon appeal, the Court of Civil Appeals reversed the judgment of the district court and *rendered* judgment for the defendant in error. See 276 S. W. 956.

Defendant in error is a "local mutual aid association," organized under the laws of this state, with headquarters at Brownwood. It is subject to the laws governing such associations. It contested the suit of Mrs. Schumann mainly upon two grounds: (1) That insured had falsely stated his age in his application for membership; (2) that, regardless of that issue, he was in fact more than 60 years of age, and therefore, under the by-laws or articles of the association itself, ineligible for membership. In that connection, it was alleged the insured was charged with notice of the by-laws of the company or its articles of association.

On the other hand, it is the contention of plaintiff in error that the insured gave his age correctly and that it was changed by the agents of the company thereafter; that, having correctly given his age, the insured was justified in assuming that the company's officers, president, and secretary, having issued the policy and delivered it to him, were authorized to do so. In this connection, the by-law as to age reads as follows:

"No applicant under the age of 16, or over the age of 60, computed from his or her nearest birthday, shall be admitted to membership, provided the secretary may, with the consent of the board of directors, issue a policy to any applicant after satisfying himself that said applicant would be of mutual benefit to the association as a member."

It is clear that the secretary of the association, Mr. Johle, was also its general manager. The duties of the secretary are defined in the articles of association as follows:

"(8) The secretary shall keep a complete record of all matters pertaining to the association, shall have general and direct control of the departments of the association for the solicitation of members, issue policies, make all necessary reports, execute all orders made by officers of association authorized to issue the same. He shall prepare all necessary blanks, for the prosecution of the affairs of the association, and shall, when necessary, appoint, with the consent of the association, assistant secretary to assist in the performance of his duties, and he shall perform all and such other duties as may be required of him by law.

"(9) The president and secretary shall sign all certificates issued on the application of members, provided the name of the president may be printed or lithographed on said certificate when properly attached by the secretary."

The Court of Civil Appeals held that it was conclusively established by the evidence that insured stated his age falsely. If the court be correct in that conclusion, then there could be no liability under the policy. We shall discuss this conclusion a little later. Having so decided this one controlling question, the Court of Civil Appeals pretermitted a decision of any other assignments.

[1] We think there was evidence in the record tending to show that the insured gave

his age truthfully in answering the soliciting agent of the company, who had been brought to the home of the insured by one of the latter's friends. If this issue was raised, then we are of the further view that the insured was entirely justified in believing that the directors of the company had authorized the secretary to issue the policy, even though he was more than 60 years of age. He had a right to assume that the secretary had not violated his duty. We know of no decisions holding to the contrary of our last conclusion. If the by-laws had *absolutely* forbidden membership to a person over 60 years of age, then there *might not* be any liability here. See Hemphill County Home Protective Association v. Richardson (Tex. Civ. App.) 264 S. W. 294. That question is not before us and we *do not decide it.*

[2, 3] So we come back to the one controlling question as to whether or not the insured correctly gave his age in answering the agent's questions. The proof is that the agent wrote down the answers himself. The admission of the secretary is that he himself mutilated the application after it reached his desk. The original application is before us. It shows · a change was made. In explanation, the secretary said he only made more distinct the figures already in the application; that, in fact, he did not change the figures as originally written therein. It is well settled that a jury is not compelled to credit the statement of one who admits that he did anything to a paper which had theretofore been executed by some one else. Ordinarily, and primarily, no one has a right to make any change or tamper with an instrument already signed by another. It was for the jury to say whether his explanation was false or otherwise. He was an interested witness. In the case of Houston E. & W. T. Railway Co. v. Runnels, 92 Tex. 307, 47 S. W. 972, our Supreme Court said:

"It is the province of the jury to pass upon the credibility of the witnesses and *they may disregard the testimony of a witness who has neither been impeached nor contradicted,* if they believe his statements to be untrue from his manner of testifying, prejudice exhibited towards the opposite party, or his interest in the result of the litigation, or other things indicated that the evidence is not reliable. Cheatham v. Riddle, 12 Tex. 112; Coats v. Elliott, 23 Tex. 613."

[4] Since we shall recommend that this case be remanded for another trial, we shall not go into the evidence in detail, but merely state that there are many circumstances in this record which justify the verdict of the jury to the effect that the insured told the truth when he stated his age to the soliciting agent. Therefore the Court of Civil Appeals erred in rendering final judgment to the contrary. That court shows clearly that the verdict in this respect was, in their judgment, not only without any evidence to support it, but was contrary to the great weight of the evidence. Upon the latter theory, it was the duty of that court to reverse the judgment of the trial court and remand the cause for another trial; but that court did not have the right to render final judgment because in its judgment the verdict was against the weight of the testimony.

[5] But it is suggested that it was the duty of the insured to read his application before he signed it and be sure his answers had been correctly written therein. This is not the law, unless the insured so agrees in the contract. And in the case at bar, even if he had read the answers himself, instead of relying upon the agent of the company to read them to him correctly, it is not at all clear that the controversy herein would have been avoided, since the jury found that the changes were made after the application left the hands of the insured.

The law regarding the duty of an applicant to read his answers before signing is well settled in Texas. It had its beginning in the very able opinion of our Supreme Court in the case of Equitable Life Insurance Co. v. Hazlewood, 75 Tex. 338, 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893. The same rule is followed in the later opinions of our Courts of Civil Appeals in the cases of Supreme Lodge of the Fraternal Brotherhood v. Jones, 143 S. W. 251, and Sovereign Camp, W. O. W., v. Ray, 262 S. W. 819.

As pointed out in the Hazlewood Case, the rule of law applicable depends in a large measure on the wording of the warranty as to the representations made. In the case at bar, the warranty is in the following language:

"I warrant and declare that the answers to the above questions are true and correct and hereby agree that any material misstatement shall render void any certificate based thereon."

It will be seen that Schumann did not warrant that the agent had correctly written his answers, but only that his answers, as made by him, were true and correct. Bearing these distinctions in mind, our Supreme Court, in the Hazlewood Case, supra, said:

"We think there is a material difference between the undertaking by the insured in that case and in the one before us. In that case he agreed that he would be bound by the statements as written down, and that no statements not written down should be binding on the company or in any manner affect its rights.

"In the case before us the agreement of the insured was that his answers made or to be made to the medical examiner were warranted to be true. He did not warrant that his answers would be written down correctly by the medical examiner, or that the answers given by him would be correctly reported to the company.

"While the doctrine of warranty will be strictly applied, it should be as strictly limited to the precise undertaking of the party making it. If beyond requiring that the insured

should warrant the truth of all answers given by him, the company intended, as it had the right to do, that he should also warrant that his answers should be correctly written down and reported, and that he would warrant them, not only as given by himself, but as written down, the agreement could have been made to so express, and it ought to have been done.

"The charge requested by the defendant, as above stated, and refused by the court, reading that, if the jury found from the evidence that said 'written answers' were 'in any respect' untrue, they should find for the defendant, extended the warranty of the insured so as to bind him for the truth of the answers as written, instead of their truth as given by him. In view of the fact that plaintiff's contention was that the insured gave true answers to the questions, which were incorrectly written down and reported by the medical examiner, and that the insurer did not read the answers, or sign the paper containing them, which there was evidence tending to support, we think the charge was incorrect in this particular."

We quote again from that decision of our Supreme Court as follows:

"While the insured cannot, as is contended for by appellant, be held bound as a warrantor for the truth of the answers as written, it does not by any means follow that he was under no obligation about their being correctly written down, in so much as that depended upon him or was properly within his control. He had undertaken to make true answers, and he must be presumed to have known that the object in having them written down was to furnish information to the absent officers of the corporation of material importance to them in determining whether or not they would execute the contract.

"Where there were no circumstances to excite his suspicion to the contrary, we see no reason, however, why he may not have trusted to the medical examiner's correct and honest performance of this duty. We do not think his contract, or the exercise of ordinary prudence, demanded of him to assume that there was any want of capacity, care, or honesty upon the part of the medical examiner, or made it his duty to assume the exercise of a supervisory power over the work of that officer. As a general rule, no doubt, the subjects of insurance will be but little qualified for such a task.

"If, however, it did by any means come to the knowledge of the insured that answers given by him had been incorrectly written down, it then became his duty to see that the proper corrections were made, and if he failed to do so, then, although not bound by a warranty, plaintiff ought now to be held estopped from disputing them as written; and if under such circumstances incorrectly written answers materially affected the risk, and the issue was properly raised by the pleadings and sustained by the evidence, a recovery ought not to be had.

"We deem it sufficient to say that we do not think this character of issue was presented by the pleadings or the charge of the court, and the record before us suggests that the evidence upon it would have been thoroughly conflicting and amply sufficient to support a verdict in favor of plaintiff."

The Court of Civil Appeals at Texarkana, in the case of Fraternal Brotherhood v. Jones, supra, upon the very point in question, speaks as follows:

"In 3 Cooley's brief on the Law of Insurance, p. 2594, it is said: 'From an examination of the cases the following propositions may be regarded as established by the weight of authority: Where the insured in good faith makes truthful answers to the questions contained in the application, but his answers, owing to the fraud, mistake, or negligence of the agent filling out the application, are incorrectly transcribed, the company is estopped to assert their falsity as a defense to the policy. The acts of the agent, whether he is a general agent or merely the medical examiner for the company, are in this respect the acts of the company, and he cannot be regarded as the agent of the insured, though it be so stipulated in the application or policy.' The same statement is a text in 2 Bacon on Benefit Societies and Life Insurance, § 427. The great weight of authority is with the statement, where the insured acts in good faith and is himself without fault. Reference may be made to the following: Pudritzky v. Supreme Lodge Knights of Honor, 76 Mich. 428, 43 N. W. 373; Whitney v. Accident Association, 57 Minn. 472, 59 N. W. 943; Life & Accident Co. v. Davis, 59 Kan. 521, 53 P. 857; Life Assurance Co. v. Cannon, 201 Ill. 260, 66 N. E. 388; Grattan v. Life Ins. Co., 80 N. Y. 281, 36 Am. Rep. 617; [Union] Mutual Life Ins. Co. v. Wilkinson, 13 Wall. 222, 20 L. Ed. 617; [American] Life Ins. Co. v. Mahone, 21 Wall. 152, 22 L. Ed. 593; [Provident] Life Assur. Co. v. Reutlinger, 58 Ark. 528, 25 S. W. 835; Shotliff v. Modern Woodmen, 100 Mo. App. 138, 73 S. W. 326. The Supreme Court of this state has already indicated its support of the rule enunciated, and applied the doctrine of estoppel, as in the cases above, where statements are warranties. Insurance Co. v. Hazlewood, supra; [Crescent] Insurance Co. v. Camp, 71 Tex. 503, 9 S. W. 473; [Mutual Life] Insurance Co. v. Blodgett, 8 Tex. Civ. App. 45, 27 S. W. 286; [Home] Insurance Co. v. Lewis, 48 Tex. 622; Order of Columbus v. Fuqua [Tex. Civ. App.] 60 S. W. 1020. The cases cited by appellant of [American Union Life] Insurance Co. v. Judge, 191 Pa. 484. 43 A. 374; Ferris v. Assur. Co., 118 Mich. 485, 76 N. W. 1041, and the others. as supporting its contention of forfeiture, show that the answer in the first instance to the medical examiner was not responsive to the question, and false, and the cases turn upon the falsity and untruth in fact of the answers so given. Such cases and the like are not at all opposed to the rule enunciated, but are in line with its requirement that the insured must make in good faith truthful answers to the questions contained."

A writ of error was refused by our Supreme Court in the case from which we have just quoted. It is a very able opinion in our judgment.

To the same effect is the holding in the Ray Case, supra, by the Court of Civil Appeals at Beaumont. It seems that no writ of error was applied for in the Ray Case.

The Ray Case was decided just about two years ago, and is a very able opinion.

Under the terms of our statute itself, Martin, the soliciting agent in the case at bar, is regarded as the agent of the company and not of the insured. See article 4968, Revised Civil Statutes of 1911.

[6] In this case there was nothing to cause the insured to suspect that Martin would falsify his answers. That being true, he had a right, under the authorities we have reviewed, to rely upon Martin's honesty in filling out the application. But, even if he had not done so, it is clear, from the verdict of the jury, that a reading of the application by the insured would not have divulged the situation which later developed and gave trouble. These issues were submitted to the jury without objection from counsel for the company. It would seem that these attorneys thought *then* that the issues were raised by the evidence before the jury. The latter found that Schumann told the truth and that these agents themselves falsified their own records. Under these findings, which issues we have held were raised by the evidence in the record, it was immaterial whether Schumann was under duty to read the application for himself or not. Under those very findings, the company was liable in any event.

We believe we have disposed of all assignments in the application which will likely arise upon another trial of this case.

[7] As we have already stated, this company is apparently a local mutual aid association. If the facts so show upon another trial, then the court should not award a judgment against it for penalties and attorney's fees because of delay in making payment. It has been definitely decided by Section A of the Commission of Appeals, in a well-considered opinion by Judge Taylor in the case of Pledger v. Business Men's Accident Association, 228 S. W. 110, that article 4746 (penalties and attorney's fees) does not apply to mutual aid or fraternal societies.

The Court of Civil Appeals did not discuss this question because it did not reach it; but it was raised in the briefs of both parties in that court and may arise upon another trial. For that reason, we have deemed it advisable to make this holding.

[8] Although we differ from the Court of Civil Appeals in its view upon the question as to whether or not certain issues were raised by the evidence, we cannot affirm the judgment of the trial court. The Court of Civil Appeals, as already stated, expressly held that the verdict of the jury was against the preponderance of the testimony. It had a right to remand the cause for that reason. Its action in that respect is final. All the Supreme Court can do in this case, under the circumstances, and under the well-settled rules of practice, is to remand the cause to the district court for another trial. See Barron v. Railway Co. (Tex. Com. App.) 249 S. W. 825; Lilienthal v. Indemnity Exchange (Tex. Com. App.) 239 S. W. 906; Turley v. Campbell (Tex. Com. App.) 241 S. W. 682; Brown v. City Service Co. (Tex. Com. App.) 245 S. W. 656; Chapman v. Kellogg (Tex. Com. App.) 252 S. W. 156; Marshburn v. Stewart, 113 Tex. 518, 254 S. W. 942, 260 S. W. 565; International G. N. R. Co. v. John T. Brady Corporation (Tex. Com. App.) 283 S. W. 484.

For the reasons stated by us, we recommend that the judgments of the district court and Court of Civil Appeals be reversed, and the cause remanded to the former for another trial not inconsistent herewith.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.