John C. ODOM, Administrator of the Estate
of Larry Dean Koestler, Deceased,
et al., Petitioner,

v.

The INSURANCE COMPANY OF the
STATE OF PENNSYLVANIA,
Respondent.

No. B-1637.

Supreme Court of Texas.

May 27, 1970.

Rehearing Denied July 8, 1970.

Bryan, Wilson, Olson & Stem, William
M. Harman, Waco, Tom Carlile, and Lee
Curtis, Killeen, for petitioner.

Strasburger, Price, Kelton, Martin &
Unis, John H. Marks, Jr., Dallas, for re-
spondent.

SMITH, Justice.

This declaratory judgment suit was filed
by the Insurance Company of the State of
Pennsylvania to cancel a liability insurance
policy issued to Larry Dean Koestler.
Cancellation was sought on the ground that
the insured had made material false state-

ments in his application for insurance. A declaratory judgment was also sought declaring that it had no obligation to defend actions brought against the administrator of Larry Dean Koestler, deceased, by William L. Hardy, for damages arising out of an automobile collision allegedly caused by the neglience of Larry Dean Koestler. A cross-action was filed by the petitioners, seeking a declaratory judgment that the insurance policy was valid and that the Respondent was, therefore, obliged to defend Larry Dean Koestler's estate from any suit by William L. Hardy, and to pay any resulting judgment in favor of Hardy against Koestler's estate.

Respondent alleged in its petition for declaratory judgment, that on or about March 26, 1965, it issued[1] its policy of liability insurance to Larry Dean Koestler and that the policy provided that "issuance was conditional upon the truth of certain answers given by Koestler to questions propounded to him, such answers being warranted by him to be true. The policy further provided that should such statement be false, then the * * * policy would be of no force and effect." It was further alleged that the application for insurance contained false answers to questions inquiring whether Koestler had been convicted of a moving violation or had been involved in an accident within the past thirty-six months. The answers[2] given were in the negative when "* * * Koestler had in fact been involved in at least two motor vehicle accidents in the thirty-six months immediately preceding March 26, 1965, and had been convicted of at least five moving traffic violations."

The declarations in the application, which were attached to and made a part of the policy, also contained a warranty, as follows:

"I hereby warrant the truth of the above statements and I declare that I have not

withheld any information whatever which might tend in any way to increase the risk of the Company or influence the acceptance of this application. Additionally, I warrant that my automobile will be operated only by persons holding valid drivers' licenses. I understand that any false statement by me will constitute a breach of warranty, and cause the policy to be void as provided by the conditions of the policy. I agree that this application shall be the basis of the policy between me and the Company."

Respondent further alleged that the policy was void from its inception and that it was under no obligation under the policy "either to defend the above said action brought against the said John C. Odom, or otherwise."

Defendants pleaded that George Tucker, the Respondent's agent "was fully informed concerning the driving record of * * * Koestler and knew the facts concerning the traffic violations of which Koestler was guilty and concerning the motor vehicle collision in which Koestler had been involved. And these defendants say that such knowledge on the part of the plaintiff's agent, George Tucker, was and is imputed to the plaintiff, and therefore the plaintiff is estopped to assert as a defense to any liability on the part of plaintiff under said policy any incorrect statement concerning Koestler's driving record which may have been contained in said application for insurance." Defendants also pleaded a general denial and demanded strict proof of the allegations contained in plaintiff's pleadings.

Although the Respondent alleged that there were bona fide disputes and controversies between the parties and sought a declaration of its rights, it, nevertheless, on October 19, 1966, moved for summary judgment on the grounds that: (1) there

---

1. The Respondent does not contend that the agent who prepared the application and issued and delivered the policy was without authority to act as its agent.

2. The answers contained in the application were given by Mrs. Koestler. For the purpose of this opinion, we consider that Mrs. Koestler at all pertinent times was the agent of Koestler.

was no genuine issue as to any material fact, and (2) that as a matter of law the policy issued to Koestler was void "due to the false answers given to questions propounded to him in the declarations which constituted a part of the policy."

On November 1, 1968, the motion for summary judgment was sustained and judgment entered that "the policy of insurance * * *, be, and it hereby is in all things declared null, void and of no force and effect from its inception date of March 26, 1965." The Court of Civil Appeals affirmed. 441 S.W.2d 584. We affirm.

The summary judgment proof consisted of the Insurance Policy, which contained a copy of the Application for Insurance; a certified copy of Koestler's driving record; and the depositions of Tucker and Mrs. Doris Mashburn.

The pertinent provisions of the policy are as follows:

"THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA PHILADELPHIA, PA.

"Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to all of the terms of this policy: * * *

"By acceptance of this policy, the insured named in Item 1 of the Declarations agrees that the statements in the Declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

" * * *

"Changes: Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy."

It is undisputed that in the thirty-six months immediately preceding the date of the application for insurance the Insured had been involved in at least two motor vehicle accidents, had been convicted of at least five moving traffic violations, and had had another liability insurance policy cancelled.

Tucker's deposition shows that he had previously accepted an application from Koestler for insurance with the Pioneer Insurance Company; Tucker knew that the policy, which was issued by Pioneer, had been cancelled because he himself had received a copy of the cancellation notice. Further, that he knew that Koestler had been involved in an accident in connection with a D.W.I. incident. Tucker testified that he himself had typed in the answers to the questions in the application for insurance, and then Mrs. Koestler had signed it for her husband. Tucker could not recall whether he had propounded the question on the application to Mrs. Koestler, nor whether or not she had read the application as he had completed it before she signed it. When asked if he did not see fit to make further inquiries before writing the policy through the Insurance Company, he answered that it was his understanding, after talking with Mr. Loreno, a special agent of the Insurance Company, that:

"* * * until such time that Mr. Koestler was found guilty of this charge that was entered against him in the Motor Vehicle Records, that he was not guilty of the offense and so forth, and that the answer to it was 'No' and forget about it and go on and write it and that's why I wrote the insurance."

Tucker's deposition further shows that the particular form of the insurance policy in suit was different from "what's used by the approved standard Texas forms" in

that it appeared to be "more of an application for insurance and a policy all combined into one sort of as a shortcut where you can use the application as the face sheet of the policy." The policy, in fact, does reflect that the application is a part of the policy. The policy with the application attached was delivered to the applicant.

Mrs. Doris Mashburn testified by deposition that she was instructed by representatives of the Respondent company to deliver insurance policy forms of the Respondent to George Tucker, and other agents, for them to use "until such time as their supplies could be sent from New York." These forms "came pre-stamped, so to speak, with the agent's name," which accounts for the policy bearing the signature of Doris Mashburn as agent. The insurance policy also bears the signatures of the secretary and the president of the Respondent company, apparently also signed in advance.

In cases where a summary judgment has been granted, whether in favor of the plaintiff or defendant, "the question on appeal, as well as in the trial court, is *not* whether the summary judgment proof *raises fact* issues with reference to the essential elements of a plaintiff's claim or cause of action, but is whether the summary judgment proof *establishes* as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. The last sentence of paragraph (c) of Rule 166–A, Texas Rules of Civil Procedure, governs. It provides:

" 'The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, *show that*, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' "

Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.Sup.1970); Harrington v. Young Men's Christian Association of Houston and Harris County, Texas, 452 S.W.2d 423 (Tex.Sup.1970); Prestegord v. Glenn, 441 S.W.2d 185 (Tex.Sup.1969); Rule 166–A(c), Texas Rules of Civil Procedure.

The Court of Civil Appeals based its decision upon two theories. First, it held that the agent ceased to act for his principal in good faith and, as a matter of law, there was collusion between Tucker and Koestler which rendered the policy void, citing Centennial Mutual Life Association v. Parham, 80 Tex. 518, 16 S.W. 316 (1891). Next, the intermediate court relied on the rule announced in the case of Texas State Mut. Fire Ins. Co. v. Richbourg, 257 S.W. 1089 (Tex.Comm.App. 1924), from which it quoted as follows:

" * * * where false statements and representations, which are warranted to be true, are written into an application for insurance by the agent, and the applicant knows or has the means of knowing that such statements are contained in the application, and are not true, the insurance company is not precluded from avoiding the policy where it has been conditioned upon such false representations."

Our decision is based upon this latter holding.

When the writ of error was granted, this Court was of the tentative view that the rule announced in Schumann v. Brownwood Mut. Life Ins. Ass'n., 286 S.W. 200 (Tex.Comm.App.1926), cited by Petitioner, and other authorities similarly holding, controlled, and that the Respondent had not met the burden of showing that the summary judgment proof established that there was no genuine issue of fact as to one or more of the essential elements of its cause of action and that it was entitled to judgment as a matter of law. Upon further consideration of the summary judgment proof, and a more complete research, we have concluded that the rule announced in the *Richbourg* case controls.

We find from an examination of the decisions of this and other jurisdictions, as well as the treatises by Appleman [3] and Couch [4] that the rule is well recognized that where, as here, an application for insurance is attached to and made a part of the policy and is accepted and retained by the insured, the insured is conclusively presumed to have knowledge of its contents and to have ratified any false statements therein. Fitzmaurice v. Mutual Life Ins. Co. of New York, 84 Tex. 61, 19 S.W. 301 (Sup.Ct.1892); Sovereign Camp Woodmen of the World v. Lillard, 174 S.W. 619 (Tex.Civ.App.1914) error refused; Texas State Mutual Fire Ins. Co. v. Richbourg, 257 S.W. 1089 (Tex.Comm.App.1924); Willis v. Texas Prudential Ins. Co., 101 S.W.2d 857 (Tex.Civ.App.1937) error refused; and Lindley v. Franklin Fire Ins. Co., 137 Tex. 196, 152 S.W.2d 1109 (Tex.Comm.App.1941).

Under the proof in this case, the Petitioner was bound by the misstatements appearing in the application for insurance. The application together with the policy was delivered to the Petitioner and having accepted the policy and having had an opportunity to examine the instrument, he will not be allowed to claim, under the circumstances, that he was without knowledge of the false statements in the application.

The Petitioner relies on the case of Schumann v. Brownwood Mut. Life Ins. Ass'n., 286 S.W. 200 (Tex.Comm.App. 1926). In the *Schumann* case, cited by Petitioner, no mention is made of a delivery of a copy of the application for insurance to the insured, from which an opportunity to read the application could have been inferred. The same is true of the following cases, which we have found to be in accord with *Schumann*: Equitable Life Assur. Soc. v. Hazelwood, 75 Tex. 338, 12 S.W. 621 (1889); The Homesteaders v. Stapp, 205 S.W. 743 (Tex.Civ.App.1918) error refused; and American Nat. Ins. Co. v. Park, 55 S.W.2d 1088 (Tex.Civ.App. 1932) error refused.

The case of Washington National Ins. Co. v. Brock, 60 S.W.2d 861 (Tex.Civ. App.1933) error refused, did extend the rule announced in the *Schumann* case to a factual situation where the insured was given a copy of the application for insurance, and did therefore have an opportunity to read it and find that the information he had given to the insurance agent in question had not been correctly transcribed and that as a result some of the answers were false. This Court approved the holding in *Brock* by refusing the writ of error without qualification, and it was cited by Appleman at § 9401, as authority for the rule of the *Schumann* case. A re-examination of the *Brock* case has convinced us

3. Appleman, Insurance Law and Practice, vol. 17, § 9405:
   "Where an application is attached to a policy and is accepted and retained by the insured, the general rule is that he is conclusively presumed to have knowledge of its contents and to have ratified any false statements therein, so that he is estopped to claim that he did not make such statements, or that he gave true information and that such answers were those of the insurer's agent, or that the agent had knowledge of the falsity thereof, and his failure to read such statements or to have actual knowledge thereof is immaterial."

4. Couch on Insurance, 2d, vol. 7, § 35:-211:
   "By the majority view, the insured is bound by misstatements appearing in an application attached to the policy delivered to and retained by him. That is, by accepting a policy which he has had the opportunity of examining, he becomes bound by misrepresentations inserted therein, or in the application which is made a part thereof, by the insurer's own agent, for the insured is under a duty to read over an application attached to the policy, particularly when a policy provision so requires. A factor inclining the court to the adoption of the majority view is the circumstance that in the given case the fraud is such that it could have been easily detected by the insured, had he read the copy."

that it is out of harmony with the holding made herein; it is accordingly overruled.

We affirm the judgments of the trial court and the Court of Civil Appeals.