**GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, Plaintiff-Appellee,**

**v.**

**John B. EAGLE et al., Defendants,**

**Robert M. Eagle, Independent Executor of the Estate of John B. Eagle, Deceased, and Eagle Lincoln Mercury, Inc., Defendants-Appellants.**

**No. 73–1687**
**Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

Sept. 10, 1973.

Rehearing Denied Oct. 4, 1973.

\* Rule 18, 5 Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

B. F. Coker, Joe K. Hendley, Dallas, Tex., for defendants-appellants.

Larry M. Lesh, Dallas, Tex., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

This diversity case arises from an attempt by Guardian Life Insurance Company, plaintiff-appellee, to rescind a $100,000 policy on the life of the late John B. Eagle on the ground that Eagle knowingly and intentionally made false statements concerning his physical condition on the policy application. The trial court ordered cancellation of the insurance and denied the counter-claim of Eagle's beneficiaries, defendants-appellants,[1] for the face value of the policy. We affirm.

Appellants allege three points of error: (1) that there is insufficient evidence to support the trial court's finding that John Eagle knowingly made false statements with the intent to induce action by Guardian; (2) that Guardian has waived its right to rely on Eagle's allegedly fraudulent statements by its negligence in conducting the initial investigation; and (3) that Guardian is

---

[1] This action was instituted by Guardian against John B. Eagle and Eagle Lincoln-Mercury, Inc. While the suit was pending, John Eagle died, and Robert M. Eagle, executor of the estate of the insured, was made a party.

estopped from claiming that it was misled by Eagle since its agent had knowledge of Eagle's condition.

■ The first point can be quickly dispatched. The parties do not dispute that under Texas law an insurance company seeking to rescind a policy on the basis of false statements in the application struggles under the heavy burden of proving that the statements were (1) false, (2) known by the insured to be false, (3) material to the company's risk, (4) made with the intention of inducing reliance, and (5) actually relied upon. *See* Clark v. National Life & Accident Insurance Co., 1947, 145 Tex. 575, 200 S.W.2d 820. Following trial below the very able district judge made detailed findings of fact, and he held against appellants on each of these five specifications. Although appellee's original burden was great, it is more than equalled by the barrier confronting appellants here—the necessity of demonstrating that the findings of the court below are clearly erroneous. 52(a) F.R.Civ.P. In this instance, the task has proven impossible of performance; for when district court findings of fact are challenged "[t]he question is not simply whether the reviewing court would have found otherwise but whether the trial court could permissibly find as it did." Movible Offshore, Inc. v. The M/V Wilken A. Falgout, 5 Cir. 1973, 471 F.2d 268, 271. The record shows ample evidence on which the district court could have based its findings. The court was not required to believe, given the nature and seriousness of Eagle's condition and the frequency, duration, and variety of his medical examinations, that he was unaware of his medical history or had forgotten about previous treatments.

Appellants' second contention of error rest largely on the decision of this Court in Jefferson Amusements Co. v. Lincoln National Life Ins. Co., 5 Cir. 1969, 409 F.2d 644. Like the present case, *Jefferson* involved an attempt by an insurance carrier to defeat liability on a life insurance policy under Texas law by proof of fraudulent statements concerning the health of the insured. Quoting an earlier Mississippi diversity decision, this Court noted that:

> "The mere fact that the insurer makes an independent investigation . . . does not absolve the applicant from telling the truth nor lessen the right of the insurer to rely upon his representations, UNLESS THE INVESTIGATION either discloses the falsity of the representations or DISCLOSES FACTS WHICH WOULD PUT A PRUDENT PERSON ON FURTHER INQUIRY."

Apperson v. United States Fidelity & Guaranty Co., 5 Cir. 1963, 318 F.2d 438, 441 [emphasis added by *Jefferson* Court]. Appellants argue for the application of this rule to prevent rescission on the basis of Eagle's incomplete answers to questions concerning prior hospitalization and his physician's non-responsive replies to a request for more detailed information. Appellants contend that Dr. McNamara's reply, in particular, would have prompted a prudent insurer to suspect concealment of relevant medical information.

■■ The matter of appellee's prudence in accepting the policy on the evidence before it was argued in the district court. Questions concerning the industry practice were put to appellee's expert witness on cross-examination. There is no allegation here that the trial judge had inadequately instructed himself on the law, and it is the clear rule in this Circuit that questions concerning the diligence and justified reliance of an insurance company are issues of fact to be governed on appeal by the clearly erroneous standard. Apperson v. United States Fidelity & Guaranty Co., *supra*, at 442. *See also* Trawick v. Manhattan Life Insurance Co. of N.Y., N.Y., 5 Cir. 1971, 447 F.2d 1293. *Jefferson*, which upheld the determination of the trier of fact on the matter of rescission, is not to the contrary. And we cannot say that the statements elicited of appellee's expert, hedged as they were with comments on the great range of conduct

within the insurance trade, satisfy appellant's burden of presenting evidence indicating clear error. Rule 52(a) F.R. Civ.P.

The final argument in favor of reversal is based on the Texas rule that false representations by the insured are not sufficient justification for rescission of a policy if the insurance carrier had knowledge of the true situation. Dossett v. Franklin Life Ins. Co., 1924, 276 S.W. 1097 (Tex.Com.App., Sec. B, opinion adopted, Tex.Sup.Ct.). As in the case of all corporate persons, appellee's knowledge must be evaluated on the basis of the information known to its agents. Appellants contend that by paying Eagle's personal physician, Dr. McNamara, to conduct the medical examination, appellee transformed the doctor into its own agent for the purpose of considering the policy, and that McNamara's knowledge of Eagle's condition should therefore be attributed to appellee. This point has some support in the statutory and case law. *See* Article 21.02, Insurance Code, V.A.T.S.; Jefferson Amusement Co. v. Lincoln National Life Insurance Co., *supra;* First Texas Prudential Ins. Co. v. Nute, 1932, 53 S.W.2d 807 (Ct. of Civil Appeals, El Paso). However, it is the clear rule in Texas that, under certain special circumstances, the insured or his beneficiaries can be estopped from setting up the agent's knowledge as a protection against the consequences of fraud.

The decision of the Supreme Court of Texas in Odom v. The Insurance Company of the State of Pennsylvania, 1970, 455 S.W.2d 195, directs that an estoppel should operate against the insured where, as in this case, "an application for insurance is attached to and made part of the policy and is accepted and retained by the insured . . ." 455 S.W.2d at 199 & n. 3. And in Willis v. Texas Prudential Ins. Co., 1937, 101 S.W. 2d 857 (Ct. of Civil Appeals, Ft. Worth), rescission of a life insurance policy was permitted in spite of an agent's knowledge of the insured's actual physical condition because the attached policy

specifically provided—in langauge nearly identical to that used in Eagle's application form—that only the president, vice-president, or secretary of the company had authority to waive contract provisions or receive additional information.

Appellants attempt to distinguish these cases on the ground that the allegedly incorrect statements made in *Odom* and *Willis* were provided as warranties, and were consequently subject to more stringent standards of interpretation and finality than are appropriate here. Appellants contend that in the instant case Eagle's statements must, as a matter of state law, be considered mere representations. This result is required, we are told by Article 3.44(4), V.A.T.S., which provides "[t]hat all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties." However, this statutory cover offers cold comfort. For we are faced here with detailed district court findings that Eagle's representations were *not* made "in the absence of fraud." The able trial judge found every element necessary to make out a case of fraud under the Texas Insurance Code. We have before us findings that material facts were deliberately misrepresented in order to induce the subsequent reliance. *See* National Life & Accident Ins. Co. v. Kinney, 1926, 282 S.W. 633 (Ct. of Civil Appeals, Ft. Worth). Since these findings are not clearly erroneous, the provision of Article 3.44 classifying all application statements as representations is entirely inapplicable.

Moreover, appellants' distinction between representations and warranties provides them with little protection in their attempt to escape the effect of these Texas precedents. It is far from clear that the policy provisions in *Willis* were considered warranties by the Court of Civil Appeals. Although *Willis* does ambiguously refer to the contested portion of the insurance application as a "stipulation," the opinion also notes the contract specification, identical to the

Texas statute cited here, that "all Statements of the Insured shall, in the absence of fraud, be deemed representations and not warranties." 101 S.W.2d at 858. A reading of the *Willis* opinion indicates that the Texas court was not concerned in that case with the label attached to the policy provision, but rather based its award of rescission on the contract language limiting the authority of agents to waive terms and receive information—language that closely parallels the contract between Eagle and appellee.

 Likewise in *Odom,* though the term *warranty* appears explicitly in the insurance contract, the Texas Supreme Court in no way relied on that aspect of the agreement, but chose to base rescission exclusively on the fact that, as in this case, the application was attached to and made part of the policy. We cannot, consistent with *Erie,* interpret state decisions as turning on elements that were clearly insignificant to the deciding tribunals. Appellants have offered no adequate bases on which to distinguish these controlling Texas precedents and none appear in the record or in the findings below.

Affirmed.