COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-067-CV

 

 

GARRY JENKINS                                                                 APPELLANT

 

                                                   V.

 

STATE AND COUNTY MUTUAL

FIRE INSURANCE COMPANY                                                    APPELLEE

 

                                              ------------

 

           FROM
THE 153RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








In two points, appellant
Garry Jenkins seeks a reversal of the trial court=s order granting summary judgment against him.  In his second point, he complains that the
trial court erred by granting summary judgment against him because there was a
genuine issue of material fact as to the coverage of the insurance policy at
issue.  We agree.  We reverse the trial court=s summary judgment order and remand the case to the trial court.

BACKGROUND

In 1997, Appellant=s foot was crushed when he and Mark Lemmon, hired as independent
contractors, moved oilfield equipment for L & G Pipe.  Mark drove the truck (Atruck@)[2]
that was covered by the automobile insurance policy (Apolicy@) issued by
Appellee to Deborah Grisamer.[3]  When Mark abruptly stopped the truck, the
2,000 pound tank skid he carried on the truck=s winch dropped on Appellant=s foot.  Appellant sued Mark,
individually and d/b/a M & T Trucking, L & G Pipe, and L & G Pipe=s owners, Deborah Grisamer and her husband, Richard Lemmon.  Mark is Richard=s brother.

Appellant obtained a default
judgment against Mark, individually and d/b/a/ M & T Trucking in July 2002,
for $650,000 in actual damages and $260,000 in prejudgment interest, when Mark
failed to answer.  In a severed action in
May 2003 (Aprior suit@), the jury found no liability for L & G Pipe, Deborah, or
Richard; it placed full liability on Mark.








In 2005, Appellant filed this
suit, claiming that Mark was a covered driver under the policy.  In its motion for summary judgment, Appellee
argued in a single ground that although the policy listed the truck as a Acovered auto,@ Mark did
not qualify as an Ainsured@ under the policy=s terms, so, as a matter of law, the policy afforded no coverage for
Appellant=s default
judgment claim against Mark.  The policy
terms at issue are found in Section II, Liability Coverage:

A. COVERAGE:  We will pay all sums an insured
legally must pay as damages because of bodily injury or property
damage to which this insurance applies, caused by an accident and
resulting from the ownership, maintenance or use of a covered auto. . .
.  [W]e have no duty to defend suits
for bodily injury or property damage not covered by this Coverage
Form. . . .[4]

1. WHO IS AN INSURED: The following are insureds:

a.
You for any covered auto. [The policy defines Ayou@ and Ayour@ as
referring to the Named Insured, in this case, Deborah]

 

b.
Anyone else while using with your permission a covered auto you own,
hire or borrow . . . .[5]

 








Appellee asserted that it was
entitled to summary judgment because the truck was owned by Mark, and was not
owned, hired, or borrowed by Deborah, the named insured; therefore, Mark was
not an Ainsured@ under the
policy=s terms.  Appellee submitted as
summary judgment evidence certified excerpts from the trial of the prior suit,
a certified copy of the truck=s title and registration records listing Mark as the truck=s owner, a copy of the default judgment rendered against Mark, a
certified copy of the policy, and a copy of the final judgment rendered on the
jury verdict in the prior suit on behalf of Deborah, Richard, and L & G
Pipe.  The trial court granted Appellee=s motion for summary judgment.

SUMMARY JUDGMENT

In a summary judgment case,
the issue on appeal is whether the movant met its summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.








When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.  Valence Operating
Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Evidence that favors the movant=s position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). Policy Coverage

We review insurance policies
like any other contract, reading all parts of each policy together and
exercising caution not to isolate particular sections or provisions from the
contract as a whole.  Provident Life
& Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003).  The cover of the policy states, 

THIS POLICY CONSISTS OF: 

S                   
DECLARATIONS

S                   
COMMON POLICY CONDITIONS

S                   
ONE OR MORE COVERAGE PARTS.  A COVERAGE PART CONSISTS OF:

 

!                  
ONE OR MORE COVERAGE
FORMS

!                  
APPLICABLE FORMS AND
ENDORSEMENTS








Within the pages of the policy itself is the
two-page policy application, placed immediately before the last page of the
policy.  See Odom v. Ins. Co. of State
of Pa., 455 S.W.2d 195, 199 (Tex. 1970) (stating that when an application
for insurance is attached to and made a part of the policy and is accepted and
retained by the insured, the insured is conclusively presumed to have knowledge
of its contents and to have ratified any false statements therein).

When terms are defined in an
insurance policy, those definitions control. 
Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 823 (Tex.
1997).  An insurance policy=s terms are unambiguous as a matter of law if a court can give
disputed words and phrases a definite legal meaning.  See Progressive County Mut. Ins.
Co. v. Sink, 107 S.W.3d 547, 551 (Tex. 2003).  Here, the policy defines Ainsured,@ in Section
II(A)(1), subsections (a) through (c).  However, not all of the terms within that
definition of Ainsured,@ specifically, Aown,@ Ahire,@ or Aborrow,@ within subsection (b), are defined.

Ownership








The right to possession and the power to control the use of the auto
determines the auto=s
ownership for insurance coverage purposes. 
See Gulf Ins. Co. v. Bobo, 595 S.W.2d 847, 848 (Tex. 1980).  Appellee attempted to establish through both
Richard=s and
Appellant=s
prior trial testimony[6]
and the truck=s
title and registration that Mark was the truck=s
owner.  Richard did testify at the prior
trial that Mark owned the truck and that neither he, L & G, nor Deborah
ever owned the truck.  But Richard also
provided the following testimony with regard to Plaintiff=s
Exhibit 1, a copy of the policy application admitted at the prior trial.

 

Q      I show you what=s been marked in evidence as
Plaintiff[>s]
Exhibit 1 and admitted this morning.  The
first page shows that there=s an International tractor on
the schedule of autos, right?

 

A      Yes, that=s correct.

 

Q      And this is for Deborah [Grisamer] up here the name?

 

A      That=s
correct.

 

Q      That=s
your wife?

 

A      That=s
correct.

 

Q      On the second page of Exhibit 1 we have her signature in three
places . . . , right?

 

A      Yes, that=s
right.

 

Q      On the second page we have a number of vehicles owned.  We list two, right?[[7]]








A      That=s
correct.

 

Q      The two on the first page of Exhibit 1 being the International
truck that was involved in this accident, right?[[8]]

 

A      That=s
what it says.

 

Q      The name of drivers on the truck owned by Deborah [Grisamer]
and L & G Pipe would show Mark Lemmon, right?

 

A      That=s
what it says . . .

 

Q      But on this certificate it shows that you owned the truck, L
& G owned the truck?

 

A      That policy is not in my name. . . .  It=s in [Deborah=s]
name.  She signed the application.

 

Q      And she says on this certificate that the International [truck]
was owned by her?

 

A      That=s
what it says.

 

Richard did not testify at all with regard to
whether he, Deborah, or L & G had the right to possession and the power to
control the use of the truck.  See
Gulf Ins. Co., 595 S.W.2d at 848. 
Neither did Appellant.  Deborah
did not testify at the prior trial.













On the policy application,
Deborah checked Ano@ under the non‑owned auto section.  Eliminating the double‑negatives, this
would indicate that the insured, Deborah, owned all of the vehicles listed on
the application.  The truck was listed on
the policy application as one of the automobiles to be covered, and Mark was
listed as a driver.  Within the policy itself,
the truck was listed with other vehicles under the heading, ASchedule of Covered Autos You Own, Extension of Declarations.@ [Emphasis added.]  There is no
requirement that the named insured have actual ownership of the automobile
covered by the policy.  See Snyder v.
Allstate Ins. Co., 485 S.W.2d 769, 771 (Tex. 1972).  However, the evidence on the face of the
policy application and the policy itself, that Deborah owned the truck listed
on the policy application and in the ASchedule of Covered Autos You Own,@ creates a conflict with Richard=s testimony in the prior trial that Mark owned the truck, and raises a
genuine issue of material fact as to the truck=s actual ownership.  Determining
whether Deborah had actual ownership of the truck, i.e., the right to
possession and the power to control the use of the truck, is the crux of the
policy coverage issue.[9]  See Gulf Ins. Co., 595 S.W.2d at
848.  Because there is a genuine issue of
material fact as to whether Deborah, and not Mark, was the truck=s owner, we sustain Appellant=s second point.[10]


CONCLUSION

Having determined that there
is a genuine issue of material fact that would preclude summary judgment for
Appellee, we reverse the trial court=s summary judgment order and remand the case to the trial court.

 

 

DIXON W. HOLMAN

JUSTICE

 

PANEL
B:  HOLMAN, GARDNER, and WALKER, JJ.

 

DELIVERED:  April 19, 2007

 











[1]See Tex.
R. App. P. 47.4.





[2]The truck=s title, issued in 1987, lists it
as A1979 Intl Tr D2137JGB28042.@ 
The policy lists it as A1979 International Tractor 8042.@ The policy application lists it as
A1979 International Tractor
D2137JGB28042.@ 





[3]State and County Mutual Fire
Insurance Company policy number FTE-000068-47, issued effective January 5,
1997.





[4]The policy explains that words and
phrases appearing in boldface type have special meanings, and refers the reader
to Section V-Definitions.  Section V
refers the reader to the AWho Is An Insured@ provision for the definition of Ainsured.@





[5]None of the other Ainsured@ definitions apply on these facts.





[6]In its motion for summary judgment,
Appellee quoted Richard=s testimony in the prior trial that
Mark owned the truck, that neither Richard, nor Deborah, nor L & G ever
owned the truck, and that the title had Mark=s name on it.  It
also referred to Appellant=s testimony in the prior trial, that Mark was the truck=s owner and that he believed Mark
had always owned it.





[7]The application reads: ANumber of vehicles owned,@ and is followed by categories with
spaces to list how many of each vehicle. 
Two tractors and two trailers are listed on the application.





[8]On the first page of the
application, the truck is listed second under ASchedule of Autos.@





[9]The policy application eliminates
the Ahire@ issue, because under the AHired Car@ section, Deborah checked Ano,@ and there was no conflicting
testimony from the prior trial or other evidence that would indicate that the
truck had been separately hired or leased. 
See Toops v. Gulf Coast Marine, Inc., 72 F.3d 483, 487-88 (5th
Cir. 1996) (defining whether an insured has Ahired@ a vehicle for purposes of
insurance coverage under the same policy terms at issue here).  However, the ownership issue is also
determinative of whether Mark could Aborrow@ the truck under Section II(A)(1)(b).  See Liberty Mut. Ins. Co. v. Am. Emp. Ins.
Co., 556 S.W.2d 242, 244 (Tex. 1977) (agreeing with lower court=s definition of Aborrower@ as Asomeone who has, with permission of
the owner, temporary possession and use of the property of another for his own
purposes@).





[10]Because of our disposition, we do
not address Appellant=s first point.  See Tex.
R. App. P. 47.1.